People v Rubadue (2023 NY Slip Op 06774)

People v Rubadue

2023 NY Slip Op 06774

Decided on December 28, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 28, 2023

112038 112445
[*1]The People of the State of New York, Respondent,
v
Kelsey Rubadue, Appellant.

Calendar Date:December 14, 2023

Before:Egan Jr., J.P., Pritzker, Ceresia, Fisher and Powers, JJ.

Edward S. Graves, Indian Lake, for appellant.
Gary M. Pasqua, District Attorney, Canton (Matthew L. Peabody of counsel), for respondent.

Egan Jr., J.P.
Appeals (1) from a judgment of the County Court of St. Lawrence County (Jerome J. Richards, J.), rendered December 3, 2019, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the second degree, and (2) by permission, from an order of said court (John F. Richey, J.), entered May 29, 2020, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Police received an anonymous tip that methamphetamine was being manufactured at a residence in the City of Ogdensburg, St. Lawrence County and, after detecting the distinctive smell of methamphetamine production outside of the residence, they obtained a search warrant that was executed in the early morning hours of April 2, 2019. During the search, investigators recovered equipment and materials needed to produce methamphetamine. They also entered a bathroom to find codefendant Harold Planty, one of the home's residents, tossing an emptied plastic bottle into a wastebasket near the toilet while defendant and Kenneth Reese, her boyfriend, crouched nearby. The contents of the bottle were recovered from the unflushed toilet and tested positive for methamphetamine. Defendant, Harold Planty and codefendant Melissa Planty were thereafter charged in a June 2019 indictment with various offenses. The record reflects that Reese separately faced charges relating to the April 2019 incident, as well as an earlier one in March 2019. Following motion practice, the only charge surviving against defendant was one count of criminal possession of a controlled substance in the second degree. Defendant rejected several plea offers, while the Plantys and Reese entered into plea agreements requiring them to, among other things, cooperate in her prosecution. Following a jury trial at which it was established that the requisite amount of methamphetamine was produced at and recovered from the Plantys' residence, and the Plantys and Reese all testified to defendant's knowing involvement in that production, she was found guilty as charged.
Defendant was remanded to jail to await sentencing and, while there, disclosed to a counselor that her assigned counsel had expressed interest in a sexual relationship with her over the course of the representation. She corroborated that claim by providing a series of sexually charged text messages between them. Those messages further included assigned counsel's representations to defendant that he viewed her case as "winnable." After learning of defendant's disclosures, County Court (Richards, J.) made clear that it did not share assigned counsel's assessment that the case was "winnable" if defendant chose to go to trial and, noting the possibility that assigned counsel had hyped defendant's chances of success "because [of] his interest in a potential sexual relationship," relieved assigned counsel due to a conflict of interest and assigned substitute counsel to represent defendant going forward[*2]. In December 2019, County Court sentenced defendant, as a second felony drug offender, to eight years in prison and five years of postrelease supervision.
Substitute counsel filed a motion to vacate the judgment less than a week later upon the ground that assigned counsel had engaged in "[i]mproper and prejudicial conduct" outside the trial record that would have, if known, required reversal (CPL 440.10 [1] [f]). Substitute counsel asserted, in particular, that the proof left no question that defendant would be convicted if the case proceeded to trial and that assigned counsel nevertheless overstated her chances of success and advised her to reject several plea offers, arguing that such may well have reflected poor professional judgment resulting from assigned counsel's personal interest in pursuing a sexual relationship with defendant. County Court (Richey, J.) issued a May 2020 order in which it denied the motion without a hearing, determining that sufficient facts appeared on the record to permit adequate review of that issue on direct appeal from the judgment of conviction. Defendant appeals from the judgment of conviction and, by permission, from the denial of her CPL article 440 motion.
County Court should not have denied defendant's CPL article 440 motion due to her pending direct appeal. To reiterate, defendant argued in that motion that reversal of the judgment was required because assigned counsel had a conflict of interest arising out of his personal interest in pursuing a sexual relationship with her. "The right to effective counsel ensures not only meaningful representation but also the assistance of counsel that is 'conflict-free and singlemindedly devoted to the client's best interests' " (People v Berroa, 99 NY2d 134, 139 [2002], quoting People v Longtin, 92 NY2d 640, 644 [1998], cert denied 526 US 1114 [1999]), and a defendant is denied that right "when, absent inquiry by the court and the informed consent of [the] defendant, defense counsel represents interests which are actually in conflict with those of [the] defendant" (People v Payton, 22 NY3d 1011, 1013 [2013] [internal quotation marks and citation omitted]; accord People v Gibson, 185 AD3d 1101, 1102 [3d Dept 2020], lv denied 35 NY3d 1066 [2020]). Accordingly, if a trial court handling a criminal matter becomes "aware of facts from which it appears that conflicting interests arguably exist, the [court] must conduct a record inquiry of each defendant whose representation is potentially conflict-ridden in order to ascertain whether he or she 'has an awareness of the potential risks involved in that course and has knowingly chosen it' " (People v McDonald, 68 NY2d 1, 8 [1986], quoting People v Gomberg, 38 NY2d 307, 313-314 [1975]). The "failure to undertake [an] inquiry and obtain the defendant's consent 'requires reversal only if the conflict is an actual one. Where the conflict is merely potential, reversal is mandated only if the defendant can establish that the conflict [*3]operated on the defense' " (People v Gibson, 185 AD3d at 1102, quoting People v Payton, 22 NY3d at 1014; see People v Brown, 33 NY3d 983, 987 [2019]; People v Solomon, 20 NY3d 91, 97-98 [2012]).
"[A] sexual relationship between a lawyer and client creates the risk of impairing the professional judgment of the lawyer, and rendering the client unable to make rational decisions related to his or her case, [and] . . . may be detrimental to the client's interests" (Matter of Raab, 139 AD3d 116, 119 [1st Dept 2016]; see Rules of Prof Conduct [22 NYCRR 1200.0] rule 1.8 Comment [17]). There is therefore an inherent potential conflict of interest whenever a sexual relationship develops during the course of a representation which requires the client's awareness of the risks and his or her consent, but the circumstances surrounding the pursuit or existence of such a relationship may give rise to an actual conflict of interest, such as where counsel demands sexual relations "as a condition of entering into or continuing any professional representation" or "employ[s] coercion, intimidation or undue influence" in pursuing them (Rules of Prof Conduct [22 NYCRR 1200.0] rule 1.8 [j] [1]; see Matter of Raab, 139 AD3d at 119).[FN1] The nature of a conflict of interest arising out of a sexual relationship between an attorney and client is heavily context dependent, in other words, and the text messages between defendant and assigned counsel in the record on direct appeal leave it unclear how assigned counsel's pursuit of such a relationship unfolded and whether it gave rise to a potential or an actual conflict of interest. County Court (Richards, J.) failed to conduct the requisite inquiry to resolve that issue and either set aside the verdict or assess whether, if the conflict was only potential, defendant was aware of the potential risks and consented to them. The record further permits nothing beyond speculation as to how the conflict, assuming that it was only potential and not an actual one that would require a new trial, operated on defendant's defense. In the absence of such information, County Court (Richey, J.) improperly denied defendant's CPL article 440 motion upon the ground that "sufficient facts appear[ed] on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon [a pending direct] appeal" (CPL 440.10 [2] [b]).[FN2]
In her CPL article 440 motion, defendant filled in the omissions in the record on direct appeal with an affidavit in which she explained that assigned counsel had inappropriate contacts with her in telephone conversations and text messages during his representation of her and that he repeatedly advised her to reject favorable plea offers because, according to him, her case was winnable at trial given the proof against her. She further averred that she was following assigned counsel's advice in rejecting those offers and denied that he had ever advised her to plead guilty. Substitute counsel accordingly [*4]argued that, because it was or should have been apparent to assigned counsel prior to trial that the People had more than enough evidence to prove the charge against defendant, defendant's representations regarding the interactions between her and assigned counsel reflected that he gave advice to defendant's detriment and raised "a substantial question as to [assigned counsel's] motivation for" doing so. There was, to be sure, evidence suggesting that defendant had rejected plea offers against assigned counsel's advice, including his representation at trial that she had done so and a written "acknowledgment" to be executed by defendant that successor counsel located in his file and provided for the first time in defendant's motion papers. That said, defendant did not confirm assigned counsel's representation at trial that she had declined the plea offer against his advice and flatly rejected that claim in her affidavit, and the written acknowledgment is, notably, unsigned. We are unable to conclude from the foregoing that defendant's claims are refuted by documentary proof or that "there is no reasonable possibility that" they are true (CPL 440.30 [4] [d]; see CPL 440.30 [4] [c]). To the contrary, the text messages leave no doubt that a conflict of interest of some sort existed, and those messages, in conjunction with defendant's affidavit, raise questions as to whether that conflict was potential or actual and, if the former, whether it impacted the defense. Thus, County Court was obliged to "conduct a hearing and make findings of fact essential to the determination thereof" (CPL 440.30 [5]), and "we hold these appeals in abeyance and remit this matter to County Court for this purpose" (People v Charlotten, 44 AD3d 1097, 1099 [3d Dept 2007]). In view of the serious questions raised in defendant's motion papers regarding the viability of the judgment of conviction, as well as the length of time that she has already been incarcerated, we further direct that County Court conduct that hearing and render a decision on her CPL article 440 motion within 30 days of the date of this decision.[FN3]
Pritzker, Ceresia, Fisher and Powers, JJ., concur.
ORDERED that the decision is withheld, and matters remitted to the County Court of St. Lawrence County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Although an attorney is afforded some latitude with regard to romantic relationships with clients in most contexts, he or she is "categorically forbid[den]" from entering into sexual relations with a client in a domestic relations matter given the heightened vulnerability of such clients and potential for exploitation (Matter of Raab, 139 AD3d at 119; see Rules of Prof Conduct [22 NYCRR 1200.0] rule 1.8 [j] [1] [iii]).

Footnote 2: CPL 440.10 (2) (b) was amended after entry of the appealed-from order to explicitly exclude motions advancing a claim of "ineffective assistance of counsel" from its scope (CPL 440.10 [2] [b], as amended by L 2021, ch 501, § 1).

Footnote 3: Defendant has not sought a stay of the judgment of conviction pending appeal and release; as the appeals remain pending, however, nothing prevents her from now doing so (see CPL 460.50).