People v Kendricks (2024 NY Slip Op 01951)

People v Kendricks

2024 NY Slip Op 01951

Decided on April 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 11, 2024

112610 112693
[*1]The People of the State of New York, Respondent,
v
Robert Kendricks, Appellant.

Calendar Date:February 23, 2024

Before:Garry, P.J., Aarons, Lynch, Fisher and Mackey, JJ.

Karen G. Leslie, Riverhead, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Philip A. Alvaro of counsel), for respondent.

Mackey, J.
Appeals (1) from a judgment of the County Court of Chemung County (Richard W. Rich Jr., J.), rendered May 18, 2018, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the seventh degree, criminal possession of a controlled substance in the third degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree, and (2) by permission, from an order of said court, entered April 7, 2021, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
On September 19, 2017, police responded to a 911 call placed by a resident of a home on Franklin Street in the City of Elmira, Chemung County. The caller reported that an unknown female was being chased by a male with a gun. Upon responding to the scene, police apprehended defendant and seized a red duffel bag which contained, among other things, a Sig Sauer semiautomatic handgun, ammunition, drug paraphernalia and items commonly used to sell drugs. After defendant was apprehended, a pat-down search of his person yielded crack cocaine. The police later also recovered 139 envelopes of heroin from the scene. In connection therewith, defendant was charged by indictment with two counts of criminal possession of a controlled substance in the third degree (counts 1 and 2), criminal possession of a weapon in the second degree (count 3) and criminal possession of a weapon in the third degree (count 4). Following a jury trial, defendant was found guilty of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03) as a lesser included offense of count 1, and he was also found guilty of the remaining three counts (Penal Law §§ 220.16; 265.02; 265.03). Defendant was sentenced to a prison term of 10 years, to be followed by 1½ years of postrelease supervision for count 2, a concurrent prison term of 10 years, to be followed by five years of postrelease supervision on count 3, and to lesser concurrent terms of incarceration on the other two counts. Following defendant's sentencing, he filed a pro se motion to vacate the judgment of conviction pursuant to CPL 440.10, contending that County Court lacked jurisdiction, that the court did not comply with CPL 190.50 when it failed to dismiss the indictment for lack of notice of the grand jury proceeding, and that he had been denied the effective assistance of counsel. County Court denied his motion without a hearing. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL article 440 motion.
Defendant challenges the verdict as not being supported by legally sufficient evidence. Specifically, he contends that the evidence is insufficient to establish that he constructively possessed the firearm or the drugs recovered from the Franklin Street residence. "[C]onstructive possession is proven by demonstrating that [the] defendant exercised dominion and control [*2]over the location where contraband was found, and exclusive access is not required" (People v Smith, 201 AD3d 1126, 1131 [3d Dept 2022] [internal quotation marks and citation omitted], lv denied 38 NY3d 1035 [2022]; see People v Watts, 215 AD3d 1170, 1171-1172 [3d Dept 2023]; People v Taylor, 207 AD3d 806, 808 [3d Dept 2022], lv denied 39 NY3d 942 [2022]; People v Colter, 206 AD3d 1371, 1373 [3d Dept 2022], lv denied 38 NY3d 1149 [2022]). "To determine constructive possession, courts may consider the defendant's proximity to the contraband, whether the defendant had keys to the location where the contraband was found, whether the contraband was in plain view and whether there is witness testimony that the contraband belonged to the defendant" (People v Durfey, 170 AD3d 1331, 1332 [3d Dept 2019] [internal quotation marks, ellipsis and citation omitted], lv denied 34 NY3d 980 [2019]).
At trial, Kayla Lapere testified that on September 18, 2017 she, James Mosher Jr. and defendant spent the night at a house on Hoffman Street in Elmira. She testified that while there, she witnessed defendant selling crack cocaine and heroin out of a red duffel bag. Lapere testified that the following day she and Mosher got a ride from defendant and his then-girlfriend to Franklin Street. She testified that when the vehicle came to a stop, she grabbed the duffel bag that she knew belonged to defendant and ran. She testified that defendant pursued her on foot and that she sought refuge in an unfamiliar house on Franklin Street. While she cowered inside the house, defendant banged on and attempted to kick down the door, demanding that she return his bag. Lapere testified that she looked inside the bag and found several bundles of heroin, which she stashed inside a closet at the Franklin Street home. She later told police about the heroin and they found it where she told them she had hidden it in the closet.
Mosher testified that during the night he, Lapere and defendant spent on Hoffman Street, he also saw defendant selling crack cocaine and heroin out of a red duffel bag. He testified that defendant slept with this bag under his pillow and also carried what appeared to be a firearm in his waistband. Mosher testified that defendant told him that if he talked about what he saw, "it wouldn't be good for [his] health." Mosher further testified that when he saw Lapere grab defendant's bag, he heard defendant scream, "Bitch, give me my bag back or I will shoot you."
Two occupants of the home on Franklin Street testified that in the late afternoon of September 19, 2017, they witnessed Lapere run into the home with a "red gym bag" yelling for help and screaming, "he's got a gun, he's got a gun!" These witnesses testified that they then heard a male voice outside the door yelling, "All I want is my bag, just give me my bag!" and also heard loud banging on the door. They testified that they immediately called 911. Police officers testified that, upon arriving at the scene, they [*3]apprehended defendant and were handed a red duffel bag that contained a bottle of mannitol; a semiautomatic handgun and a magazine loaded with ammunition; a scale; marihuana; heroin and two cell phones. Officers further testified that they later recovered 139 envelopes of heroin found in a closet at the Franklin Street home. Officers testified that cell phone extraction reports from the two cell phones found inside the duffel bag contained identifying information linking them to defendant. Specifically, the "autofill" application on the phone was linked to defendant's first and last name, his email and street addresses, date of birth, gender, and a credit card in defendant's name.
Defendant's girlfriend testified that she gave Lapere, Mosher and defendant a ride on September 19, 2017 and that when she stopped her car on Franklin Street, Lapere got out of the vehicle and ran. She testified that defendant said Lapere had stolen something from him and he chased after her. Defendant told her that the bag Lapere took was important because it contained his wallet and cell phones.
Viewing the foregoing evidence in the light most favorable to the People, legally sufficient evidence exists for a rational juror to conclude that defendant constructively possessed the firearm and narcotics at issue (see People v Watts, 215 AD3d at 1171-1172; People v Taylor, 207 AD3d at 808; People v Colter, 206 AD3d at 1373). To be sure, there was ample evidence adduced that would lead a rational person to conclude that the red bag was owned by defendant and that Lapere attempted to steal it from defendant, at which time police became involved. Multiple witnesses testified that defendant owned the bag and that the phones within the bag belonged to him. Further, there was evidence that the drugs were all in the bag until Lapere took the bundles of heroin out and hid them in the closet.
Defendant next contends that County Court erred in failing to dismiss the indictment on the ground that he was denied an opportunity to testify before the grand jury. "When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his [or her] own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he [or she] serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent" (CPL 190.50 [5] [a]). "While the right to testify before a grand jury is significant and must be scrupulously protected, a prospective defendant has no constitutional right to testify before the grand jury as it is a limited statutory right" (People v Graham, 185 AD3d 1221, 1222 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 929 [2020]). The question is whether or not a defendant was afforded "reasonable notice and a reasonable opportunity [*4]to testify before the grand jury" (People v Gannon, 174 AD3d 1054, 1056 [3d Dept 2019], lv denied 34 NY3d 980 [2019]).
Here, defendant was given notice of the grand jury proceeding by the People on September 20, 2017. The next day, defendant's appointed attorney informed the People that he attempted to meet with defendant but defendant was ill. On September 23, defendant hand wrote a letter to the People requesting to be produced to testify before the grand jury. On September 26, the People informed defendant that the grand jury proceeding would take place on September 28. On September 27, the People filed an order to produce defendant for the grand jury proceedings. Prior to the presentation to the grand jury, however, defendant's attorney verbally informed the People that defendant no longer wished to testify. Defendant was ultimately indicted.
After arraignment, defendant submitted a pro se motion to dismiss the indictment, pursuant to CPL 190.50, claiming that he had not been accorded an opportunity to appear and testify before the grand jury. In a letter dated October 23, 2017, County Court declined to address defendant's pro se motion on the ground that he was represented by counsel and had no right to hybrid representation. Defendant's attorney thereafter adopted defendant's CPL 190.50 motion and incorporated it into defendant's omnibus motion. After the omnibus motion was filed, but before the court issued its decision, defendant asked the court to dismiss his attorney. The court ultimately relieved defendant's attorney and assigned him a new attorney, who did not adopt the previous counsel's motions. Rather, he decided to make a new omnibus motion, which did not include the CPL 190.50 ground. As such, County Court did not make a ruling on the CPL 190.50 issue in its decision. Under these circumstances, defendant abandoned any argument that he was denied the opportunity to testify before the grand jury (see People v Covington, 222 AD3d 1166, 1170 [3d Dept 2023]). In any event, defendant was provided reasonable notice and a reasonable opportunity to testify at the grand jury proceeding, as the People informed defendant of their intention to present the case two days before the presentation (see CPL 190.50 [5] [a]; People v Gannon, 174 AD3d at 1056).
We also reject defendant's contention that County Court committed reversible error in allowing the People to introduce evidence of a prior sale of crack cocaine and possession of a firearm that occurred on the day before the alleged crime. "While not admissible to demonstrate bad character generally or a propensity to commit the charged crimes, evidence of uncharged crimes or bad acts may be admitted if it establishes an element of the crime charged, is inextricably interwoven with the charged crime, provides necessary background, completes a witness's narrative, or falls within the five general Molineux exceptions" (People v Hebert, 218 AD3d 1003, 1009 [3d Dept 2023] [internal quotation marks[*5], ellipses and citations omitted], lv denied 40 NY3d 1080 [2023]). The five "recognized Molineux exceptions [are] motive, intent, absence of mistake, common plan or scheme and identity" (People v Gaylord, 194 AD3d 1189, 1193 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 972 [2021]). Such evidence is admissible where it is "inextricably interwoven with the charged crimes and particularly relevant and material to issues of intent to sell, an absence of mistake and defendant's ability to commit the crimes he was charged with" (People v Doane, 212 AD3d 875, 881 [3d Dept 2023] [internal quotation marks and citation omitted], lv denied 39 NY3d 1154 [2023]). Where a proper limiting instruction is given to the jury, prejudice can be dissipated (see People v Hebert, 218 AD3d at 1010). "A court's decision whether to admit [Molineux] evidence is reviewed for abuse of discretion" (People v Frankline, 27 NY3d 1113, 1115 [2016] [citation omitted]).
Before trial, the People moved to permit introduction of certain Molineux evidence in their case-in-chief. Specifically, the People sought permission to show that defendant was selling drugs and possessed the firearm at issue the night before and earlier in the day on the date of the arrest. Thereafter, a hearing was held during which defendant's attorney argued that the People's application was untimely and, in any event, that the probative value was outweighed by the potential for prejudice to him. County Court ultimately found that the probative value of the evidence outweighed its prejudicial effect, and indicated that it would provide an appropriate limiting instruction to the jury at trial. Defendant's attorney then requested an adjournment to better prepare a defense to the Molineux evidence and the court specifically asked defendant if he agreed with his attorney, to which defendant stated unequivocally that he did.
At trial, the People called Lapere, who testified that on September 18, 2017, the day before defendant's arrest, defendant arrived at the house on Hoffman Street with a big red bag and that he was selling crack cocaine and heroin to people. Lapere further testified that at one point on September 18, defendant stood up and she observed what appeared to be the butt of a handgun in his waistband. The People also called Mosher, who similarly testified that he saw defendant selling drugs on September 18 out of a red duffel bag that he carried with him and that defendant carried what appeared to be a handgun in his waistband. County Court provided limiting instructions to the jury during the testimony of each of these witnesses. The court gave another instruction during the final charge, telling the jury not to consider this evidence as proof of propensity to commit the crimes charged. We agree with the court's determination that defendant's prior uncharged criminal conduct was inextricably interwoven with the charged crimes (see People v Hebert, 218 AD3d at 1009; [*6]People v Young, 190 AD3d 1087, 1092-1093 [3d Dept 2021], lv denied 36 NY3d 1102 [2021]). We further find that the court attenuated any prejudice to defendant by instructing the jury prior to Lapere's and Mosher's testimony, and again prior to deliberation, as to the proper purpose for which the challenged evidence may be considered (see People v Hebert, 218 AD3d at 1010).
Next, we reject defendant's contentions that the People's theory at trial impermissibly deviated from the allegations contained in their bill of particulars. The indictment alleged that defendant, on September 19, 2017, possessed "cocaine, with intent to sell same . . . heroin, with intent to sell same" and a "Sig Sauer P226, .357 semi-automatic pistol loaded with seven rounds of ammunition, and such possession did not take place in the defendant's home or place of business." In response to defendant's demand, the People provided defendant with a bill of particulars stating, "defendant possessed a red zippered pouch at 112 Hoffman Street and out of the bag was observed giving, selling and exchanging narcotics to others. He transferred the bag to a vehicle which was driven to the 200 block of Franklin Street at which time another occupant of the vehicle took the bag out of the car and was pursued by the defendant trying to get the bag back. In the bag were quantities of cocaine, bundles of heroin, a cutting agent, packaging materials, a digital scale, and another case which contained a Sig Sauer P226 pistol loaded with ammunition." Then, at trial, the People adduced evidence demonstrating that the bundles of heroin were not found in the bag, but in a closet at the home on Franklin Street where they had been stashed by Lapere. Based on the foregoing, the People did not change their theory at trial, as the bill of particulars stated what theory the People planned to present, namely that the drugs were in a red duffel bag that was taken by an "occupant of the vehicle" who was pursued by defendant, attempting to get the bag back, and that the bag contained heroin, cocaine, selling material and a handgun. Furthermore, at the Mapp hearing, which was held three months prior to trial, defendant was certainly put on notice that the bundles of heroin were found in the closet, not in the duffel bag. Without question, defendant was apprised of the "theory to be advanced at trial" (People v Green, 190 AD3d 1094, 1098 n 2 [3d Dept 2021] [internal quotations marks and citation omitted], lv denied 36 NY3d 1097 [2021]; see People v Burke, 197 AD3d 967 [4th Dept 2021]; People v Johnson, 91 AD3d 1115, 1118 [3d Dept 2012]).
As a final matter, we find unpersuasive defendant's claim that he was denied effective assistance of counsel based upon an alleged conflict of interest and other errors in judgment. "Defendant's mixed claims of ineffective assistance of counsel are grounded upon matters appearing both on the record and outside the record and, therefore, they are assessed together, in totality, to [*7]determine whether he was deprived of meaningful representation" (People v Kuhn, 221 AD3d 1182, 1184 [3d Dept 2023] [internal quotation marks and citations omitted]). It is well established that "[t]he right to effective counsel ensures not only meaningful representation but also the assistance of counsel that is conflict-free and singlemindedly devoted to the client's best interests" (People v Rubadue, 222 AD3d 1266, 1268 [3d Dept 2023] [internal quotation marks and citations omitted]). "Discussions of the effect of a lawyer's conflict of interest on a defendant's right to the effective assistance of counsel distinguish between a potential conflict and an actual conflict" (People v Solomon, 20 NY3d 91, 95 [2012] [citations omitted]). Reversal is warranted when, "absent inquiry by the court and the informed consent of the defendant, defense counsel represents interests which are actually in conflict with those of the defendant" (People v Palmer, 173 AD3d 1560, 1560 [3d Dept 2019] [internal quotation marks, brackets and citation omitted]; see People v Montgomery, 221 AD3d 1347, 1349 [3d Dept 2023]).
Here, the record reveals that defendant's first defense counsel had previously represented Lapere on an unrelated family court matter. However, counsel's past relationship with Lapere was disclosed to defendant well prior to trial and defendant was assigned new counsel. In our view, defendant failed to show that his counsel's prior representation of Lapere had any impact whatsoever on defendant's defense. Further, there is nothing to indicate defendant's counsel knew of the conflict at the time of the grand jury proceedings or when defendant waived his right to a preliminary hearing (see People v Montgomery, 221 AD3d at 1349; People v Palmer, 173 AD3d at 1560).
When determining whether a defendant has been denied effective assistance of counsel, the relevant inquiry is whether "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Houze, 177 AD3d 1184, 1188-1189 [3d Dept 2019], lv denied 34 NY3d 1159 [2020]). To prevail, the defendant "must demonstrate the absence of strategic or other legitimate explanations . . . that would be consistent with the decisions of a reasonably competent attorney" (People v Maffei, 35 NY3d 264, 269 [2020] [internal quotation marks and citation omitted]; accord People v Sposito, 193 AD3d 1236, 1237 [3d Dept 2021], affd 37 NY3d 1149 [2022]). Under the circumstances of this case, viewed in their totality as of the time of the representation, we find defendant's attorneys provided meaningful representation (see People v Baldi, 54 NY2d at 147). Defense counsel made appropriate pretrial and trial motions, vigorously cross-examined the People's witnesses, presented defense witnesses and advanced cogent arguments in defendant's defense (see People [*8]v Meadows, 183 AD3d 1016 [3d Dept 2020]; People v Houze, 177 AD3d at 1188-1189). Notably, trial counsel succeeded in having count 1 reduced. We also note that at trial, defendant gave his appreciation and praise to his trial counsel stating, "I never got any appreciation for the fact that I stood up for my story. Nobody asked me to, you know, like, well — except this lawyer." Furthermore, to the extent defendant alleges in his CPL 440.10 motion that his trial counsel failed to renew or raise the CPL 190.50 motion, a defendant is not deprived of meaningful representation for a counsel's failure to make motions that have little to no chance of success (see People v Franklin, 216 AD3d 1304, 1313 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Rose, 185 AD3d 1228, 1232 [3d Dept 2020], lv denied 35 NY3d 1115 [2020]).
We have reviewed defendant's remaining contentions and find them to be without merit.
Garry, P.J., Aarons, Lynch and Fisher, JJ., concur.
ORDERED that the judgment and the order are affirmed.