*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  August 6, 2015                105618
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

LEFONZA CARTER,
                        Appellant.
_____

Calendar Date:  May 29, 2015

Before:  McCarthy, J.P., Egan Jr., Devine and Clark, JJ.

                    _____


        John P.M. Wappett, Public Defender, Lake George (Glenn B.
Liebert of counsel), for appellant.

        Kathleen B. Hogan, District Attorney, Lake George (Emilee
B. Davenport of counsel), for respondent.

                    _____


Egan Jr., J.

        Appeal from a judgment of the County Court of Warren County
(Hall Jr., J.), rendered November 28, 2012, upon a verdict
convicting defendant of the crimes of criminal possession of a
controlled substance in the third degree (two counts) and
criminal sale of a controlled substance in the third degree (two
counts).

        Defendant was indicted and charged with two counts each of
criminal sale of a controlled substance in the third degree and
criminal possession of a controlled substance in the third
degree.  The charges stemmed from defendant's sale of crack
cocaine on April 9, 2012 and April 11, 2012 to a person known to
him who was acting as a confidential informant (hereinafter CI)

for the Warren County Sheriff's Department.  On each occasion, the CI placed a call to defendant in advance, which was recorded, and the CI thereafter went to a hotel room occupied by defendant in the Village of Lake George, Warren County, where defendant provided the CI with crack cocaine in exchange for $100.  During both transactions, the CI wore a transmitter, which allowed law enforcement officials to listen to the transactions, and also was equipped with a bluetooth-like device, which captured an audio and video recording of the sales.  Following a jury trial, defendant was convicted as charged and sentenced to an aggregate prison term of 12 years followed by a period of postrelease supervision.  This appeal by defendant ensued.

We affirm.  Defendant initially contends that the People violated their obligation under Brady by failing to timely disclose impeachment information regarding the CI — specifically, details concerning her unrelated criminal activity before and after the subject sales and the terms of her cooperation agreement.  Brady requires the People "to timely disclose all exculpatory and material evidence, including evidence that could be used to challenge the credibility of a crucial prosecution witness or that would reflect a cooperation agreement between a witness and the prosecution" (People v Williams, 50 AD3d 1177, 1179 [2008] [citations omitted]; see People v Johnson, 107 AD3d 1161, 1164-1165 [2013], lv denied 21 NY3d 1075 [2013]).  In order to establish a Brady violation, a defendant must demonstrate that "(1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Fuentes, 12 NY3d 259, 263 [2009]; accord People v Garrett, 23 NY3d 878, 885 [2014]; see People v Serrano, 99 AD3d 1105, 1106 [2012], lv denied 20 NY3d 1014 [2013]).  Untimely or delayed disclosure will not prejudice a defendant or deprive him or her of a fair trial where the defense is provided with "a meaningful opportunity to use the allegedly exculpatory material to cross-examine the People's witnesses or as evidence during his [or her] case" (People v Cortijo, 70 NY2d 868, 870 [1987]; see People v Serrano, 99 AD3d at 1107; People v Williams, 50 AD3d at 1179).

Here, in response to defendant's general omnibus request

for Brady material, the People indicated that a CI had been utilized and compensated for her services; the CI's identity was disclosed in connection with the People's Molinuex application in September 2012. On Friday, October 12, 2012, with the trial scheduled to begin the following Monday, the People made numerous additional disclosures relative to the CI, including the fact that she had been involved in the sale of hydrocodone in Washington County in December 2011, that she thereafter agreed to cooperate with Warren County law enforcement officials in exchange for promises that her assistance would be made known to prosecutors and that she subsequently was promised that, if she testified truthfully in this matter, she would not be criminally charged for the 2011 prescription drug sale. On the morning of the first day of trial, the People additionally disclosed, among other things, the CI's history of drug use and prior sales/purchases of drugs, as well as the fact that the CI, who then was incarcerated due to her failure to pay certain criminal fines, received an extra piece of crack cocaine from defendant during the April 9, 2012 sale, which she secreted and did not turn over to the police. The defense also was informed that the CI was involved in an unauthorized sale of crack cocaine in her apartment in May 2012, during which another informant made a controlled buy, and that the CI later testified before the grand jury in that matter. At the conclusion of the first day of trial, the People turned over the video recording of the May 2012 drug sale and the CI's related grand jury testimony.

Although County Court denied defendant's motion to dismiss the indictment in the interest of justice as a sanction for the delayed disclosure, the court ordered the People to make available to the defense the informant-buyer involved in the May 2012 sale and, further, to delay calling the CI to testify in order to allow the defense time to prepare. Consistent with that directive, the CI was not called by the People to testify until Friday, October 19, 2012, and her direct testimony extended into the following Monday — a full week after the last disclosure. At that point, the CI was subject to in-depth cross-examination, during the course of which she was meticulously impeached on all of the foregoing matters and admitted that she had lied to the grand jury regarding her activities during the May 2012 sale. Finally, the full terms of and circumstances surrounding the

underlying cooperation agreement were elicited in detail, allowing the jury to assess the CI's credibility (compare People v Steadman, 82 NY2d 1, 7-8 [1993]; People v Novoa, 70 NY2d 490, 496-498 [1987]).[1]

As the record establishes that the defense had a meaningful opportunity to review and effectively use the impeachment materials, we are satisfied that no prejudice resulted from the delayed disclosure (see People v Cortijo, 70 NY2d at 870; People v Serrano, 99 AD3d at 1107; People v Burroughs, 64 AD3d 894, 898 [2009], lv denied 13 NY3d 794 [2009]). Further, under these circumstances, we find that there is no "reasonable probability" that, had the impeachment material been timely disclosed, the verdict would have been different (People v Garrett, 23 NY3d at 891; accord People v Fuentes, 12 NY3d at 263). Accordingly, reversal upon this ground is not warranted.

We reach a similar conclusion regarding the People's failure to preserve the original digital recordings of the set-up calls and drug transactions. "[T]he prosecution is under a duty to diligently preserve all materials which may be subject to disclosure" until a request for disclosure is made (People v Close, 103 AD2d 970, 971 [1984]; see People v Kelly, 62 NY2d 516, 520 [1984]; People v Gomez-Kadawid, 66 AD3d 1124, 1125 [2009]), and there is no dispute that these recordings were discoverable (see CPL 240.20 [1] [g]; People v Carpenter, 88 AD3d 1160, 1161 [2011]). In this instance, however, the testimony of members of the Warren County Sheriff's Department established that all of the audio and visual digital information recorded on the device worn by the CI during both sales, as well as the audio of the set-up calls, was immediately transferred to a computer — without

---

[1] Even assuming that the CI's telephone calls from the local jail to the Assistant District Attorney, which were recorded by jail staff, were under the control and possession of the People and subject to disclosure pursuant to Brady (cf. People v Lewis, 125 AD3d 1109, 1111 [2015]), the audio recordings were made available on October 17, 2012 (prior to the CI's testimony), thereby affording defendant a meaningful opportunity to use the recordings to impeach the CI during cross-examination.

alteration or deletion — and then copied to computer discs, which thereafter were provided to the defense. Only after the transfer of the original and complete digital recordings to the computer was the information removed from the recording device, so that such device could be reused. Thus, contrary to defendant's claims, the recorded digital information was never "destroyed" but, rather, was downloaded and transferred from one device to another, and the record reflects that he received an exact replica of the digital recordings (see People v Burroughs, 64 AD3d at 896-897; compare People v Saddy, 84 AD2d 175, 178-179 [1981]). Moreover, even assuming that we were to find that the procedures employed here violated the People's disclosure obligations, there was neither a showing of bad faith by the officers nor any demonstrable prejudice to defendant so as warrant a sanction (see CPL 240.70 [1]; People v Carpenter, 88 AD3d at 1161; compare People v Saddy, 84 AD2d at 179-180).

Likewise, we find that County Court properly admitted into evidence the video recordings of the April 9, 2012 and April 12, 2012 controlled buys. "The decision to admit videotape evidence rests within the sound discretion of the trial court and will not be disturbed absent a lack of foundation for its introduction or a demonstrated abuse of the court's discretion" (People v Boyd, 97 AD3d 898, 899 [2012], lv denied 20 NY3d 1009 [2013] [citation omitted]). Here, the videos of both sales were authenticated by the CI, who directly participated in the buys, identified defendant in court as the seller and, after viewing the videos, confirmed that voices on the recordings were hers and that of defendant and, further, that such recordings accurately and fairly depicted the underlying events (see People v McGee, 49 NY2d 48, 59-60 [1979]; People v Junior, 119 AD3d 1228, 1231 [2014], lv denied 24 NY3d 1044 [2014]; People v Lee, 80 AD3d 1072, 1073-1074 [2011], lvs denied 16 NY3d 832, 833 [2011]). Additionally, Jeff Gildersleeve, an investigator with the Warren County Sheriff's Department who conducted surveillance of both controlled drug buys from across the street, testified that he observed the CI enter and exit the hotel, overheard the subject sales via the transmitter, identified the voices he heard as belonging to the CI and defendant and attested to the accuracy of the events as portrayed on the relevant recordings. Kevin Clark, also a member of the Warren County Sheriff's Department, oversaw

the operation of the recording devices and their duplication and attested to the accuracy of the audio and video recordings of the controlled buys. In light of the foregoing, we are satisfied that the People laid a proper foundation for the admission of the recordings at issue.

Defendant's challenge to the accuracy of the recording of the April 9, 2012 sale — namely, that the recording ends before the CI secreted the extra piece of crack cocaine that defendant had given her — lacks merit, as both Gildersleeve and the CI testified to her actions and attested to the accuracy of the video. With regard to the recording of the April 11, 2012 sale, although the audio and video components were not synchronized, the testimony at trial established that the recording accurately and completely depicted what had occurred (cf. People v Boyd, 97 AD3d at 899). Finally, we discern no error in the admission of an edited video of the sales created by Jason Cooper, a member of the State Police video forensic unit, who explained that he used a software audio filter to improve the sound quality and synchronize the recording of the April 11, 2012 sale. Although Cooper acknowledged that he shortened the recording for demonstrative purposes to include only the portion where the CI was in the hotel room, he also verified that he had not altered the content of the previously authenticated recordings. Thus, we are satisfied that no error occurred in the admission of the recordings.

Nor do we find merit to defendant's claimed Molineux violation. During the cross-examination of Gildersleeve regarding the surveillance of these sales, defense counsel questioned why plainclothes officers had not been deployed to secure the hotel and check for drugs in advance of the controlled buys. In response, Gildersleeve indicated that defendant knew "some of our officers" from "other encounters . . . with him in other hotels"; when pressed as to whether defendant knew "every single person employed by the Warren County Sheriff['s] Department," Gildersleeve reiterated that undercover officers in his unit "had other encounters" with defendant. We find that County Court properly denied defendant's motion to strike Gildersleeve's answers, as they were responsive to the questions posed by defense counsel (not the People), were not gratuitously

volunteered and made no specific reference to prior drug sales. In short, inasmuch as the testimony completed the narrative supplied by Gildersleeve and provided context for his testimony, we find that it was properly admitted (see People v Rivera, 124 AD3d 1070, 1073 [2015]; People v Malak, 117 AD3d 1170, 1175 [2014], lv denied 24 NY3d 1086 [2014]).

We next turn to defendant's contention that County Court erred in admitting into evidence the evidence bags containing the cocaine turned over by the CI after each of the sales because the cocaine was in an altered condition. In order to establish the admissibility of real evidence, such as the actual crack cocaine involved in a drug sale, the People are required to establish its authenticity by showing "first, that the evidence is identical to that involved in the crime[,] and, second, that it has not been tampered with" (People v Julian, 41 NY2d 340, 342-343 [1977]; see People v Danford, 88 AD3d 1064, 1066 [2011], lv denied 18 NY3d 882 [2012]). One acceptable method of authenticating fungible items, such as bags containing white powder, is to establish a chain of custody (see People v Julian, 41 NY2d at 343; People v Danford, 88 AD3d at 1067; People v Gilmore, 72 AD3d 1191, 1192-1193 [2010]).

Here, the CI testified that, as soon as she exited the hotel after each controlled buy, she turned the substance purchased over to Clark; Clark, in turn, testified that he field tested the relevant substances and placed them in sealed, signed and dated evidence bags, which were stored in the evidence locker. Additionally, the evidence custodian for the Warren County Sheriff's Department testified to the procedures in place for securing and handling evidence, indicated that such procedures were followed in this case and described his transportation of the evidence to and from the evidence locker and the State Police crime laboratory. In addition, the People presented the testimony of the State Police forensic scientist who received, tested, weighed and secured the evidence, and she testified that the evidence admitted at trial was in the same condition as when she examined it. Based upon such testimony, we find that the People established a sufficient chain of custody of the crack cocaine sold by defendant, and any gaps in the chain of custody "go to the weight of the evidence, not its admissibility"

(<u>People v Hawkins</u>, 11 NY3d 484, 494 [2008]; <u>see</u> <u>People v Gilmore</u>, 72 AD3d at 1193; <u>People v Bellamy</u>, 34 AD3d 937, 939 [2006], <u>lv denied</u> 8 NY3d 843 [2007]).

To the extent that defendant argues that the disparity in the weights recorded for the cocaine — initially by the Warren County Sheriff's Department and later by the State Police — impaired the integrity of that evidence and established that it had been altered, we disagree.[2] The noted disparity was fully explained by the testimony at trial, which established that the Warren County Sheriff's Department scale was not calibrated; hence, ascertaining an accurate weight of the submitted substances was a matter left to the State Police laboratory to determine. In this regard, a State Police forensic scientist testified that the scales used in their laboratory were calibrated and tested for accuracy. Thus, the disparity was a matter relevant to the persuasiveness of the evidence, not its admissibility (<u>see</u> <u>People v Gilmore</u>, 72 AD3d at 1193). As the People provided "the necessary reasonable assurances of the identity and unchanged condition of the drugs to authenticate that evidence," County Court properly admitted the bags of cocaine into evidence (<u>People v Danford</u>, 88 AD3d at 1067; <u>see</u> <u>People v Hawkins</u>, 11 NY3d at 494; <u>People v Chappelle</u>, 126 AD3d 1127, 1128 [2015], <u>lv denied</u> ___ NY3d ___ [June 10, 2015]). Defendant's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Devine and Clark, JJ., concur.

---

[2] The weight of the cocaine was not an element of any of the charged crimes (<u>see</u> Penal Law §§ 220.16 [1]; 220.39 [1]).

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court