People v Cotto (2024 NY Slip Op 05247)

People v Cotto

2024 NY Slip Op 05247

Decided on October 24, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 24, 2024

113069
[*1]The People of the State of New York, Respondent,
v
Elgin Cotto, Appellant.

Calendar Date:September 3, 2024

Before:Garry, P.J., Pritzker, Lynch, Fisher and Powers, JJ.

Hegge & Confusione, LLC, New York City (Michael Confusione of counsel), for appellant.
Brian P. Conaty, District Attorney, Monticello (Thomas W. Raleigh of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the Supreme Court (Stephan G. Schick, J.), rendered August 20, 2021 in Sullivan County, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree and tampering with physical evidence.
In February 2018, two police officers were attempting to contact defendant on an unrelated matter. At approximately 11:00 p.m., they observed defendant leave his apartment building, enter his vehicle and drive down the road and past one of their marked patrol cars. Believing that defendant had spotted the police vehicle, they observed defendant stop at the intersection at the end of the road before turning left and accelerating hard around the corner — causing both police officers to lose visual contact with defendant's vehicle for a brief period of time as they pursued him. When they caught up to defendant, he had already parked and exited his vehicle, and was attempting to walk into a building. The police officers then effectuated a stop and subsequently detained defendant, immediately transporting him to the police station and returning to the scene. While defendant was being transported by the police officers, a sheriff's deputy who responded to the call observed that the passenger side window of defendant's car was open, which the deputy believed was odd given the wet conditions and that it was a cold night. Upon walking along the road to see if defendant attempted to discard any items, the sheriff's deputy discovered some broken glass, a 9 millimeter handgun, a corresponding magazine and a knitted glove — all dry despite that the ground around them was wet from the rain and sleet earlier that night. A subsequent investigation resulted in the discovery of a matching glove in defendant's vehicle and DNA testing determined that defendant was a major contributor to the DNA found on the grip of the handgun.
In July 2018, defendant was charged by a sealed indictment with criminal possession of a weapon in the second degree and tampering with physical evidence. Defendant then proceeded to trial in June 2019 and, after the jury could not reach a verdict, County Court (LaBuda, J.) declared a mistrial and ordered a new trial; the People declared their readiness for trial on the same day. Thereafter, defendant twice moved for a dismissal of the indictment against him alleging a violation of his statutory speedy trial rights, which motions were denied by County Court (Rounds, J.) and Supreme Court (Schick, J.). Following a second trial in June 2021, defendant was convicted as charged. Supreme Court sentenced defendant to a prison term of 10 years, to be followed by five years of postrelease supervision, on the conviction of criminal possession of a weapon, and a lesser concurrent prison term on the other conviction. Defendant appeals.
We affirm. Defendant contends that his convictions are not supported by legally sufficient evidence and that the verdict is against the weight of the evidence. Specifically[*2], he argues that he neither had nor had been seen as having physical possession of the firearm or the magazine. He further contends that the tampering with evidence conviction is against the weight of the evidence because the allegations that he threw the firearm out of a window are insufficient to sustain the conviction. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Lorenz, 211 AD3d 1109, 1109 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1112 [2023]). "In contrast, when undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Harris, 206 AD3d 1063, 1064 [3d Dept 2022] [internal quotation marks and citations omitted]). In performing our review, "we do not distinguish between direct or circumstantial evidence" (People v Rivera, 212 AD3d 942, 944 [3d Dept 2023] [internal quotation marks and citation omitted], lv denied 39 NY3d 1113 [2023]).
As charged here, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" (Penal Law § 265.03 [3]). Pertinently, "[a] 'loaded firearm' is defined as 'any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm' " (People v Watts, 215 AD3d 1170, 1171 [3d Dept 2023] [internal brackets omitted], quoting Penal Law § 260.00 [15]). As further relevant, "[a] person is guilty of tampering with physical evidence when . . . [b]elieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he [or she] suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person" (Penal Law § 215.40 [2]).
At trial, the People produced testimony from several fact witnesses who either examined the evidence or were involved at the scene. Specifically, a senior investigator with the State Police testified that he examined a 9 millimeter handgun and eight rounds of ammunition in a corresponding magazine that were recovered from the scene and swabbed various parts of each for touch DNA. A forensic scientist with the State Police testified that she analyzed those swabs against a buccal swab from defendant, and ultimately [*3]determined that the major contributor to the DNA extracted from the grip of the firearm matched the DNA profile developed from defendant's swab. She further testified the probability that the DNA was an unrelated match was 1 in 320 billion, and that the DNA results underwent a technical review by a peer as well as an administrative review.
The People also presented the testimony of various members of law enforcement, including the two police officers who were looking for defendant that evening. One police officer testified that he observed defendant's vehicle with all of the windows up before defendant accelerated around the corner. According to this police officer, when he regained sight of defendant's vehicle approximately 30 seconds later, he observed that the vehicle was wet from prior rain and that the passenger side window had been lowered. He further testified that, after transporting defendant to the police station, he returned to where other officers were left to secure the scene. He then walked along the sidewalk on the road that defendant drove down and came upon a handgun that had been discovered by a sheriff's deputy; he remained with the handgun until a detective arrived. This testimony was corroborated by the second police officer, who further added that he went into defendant's vehicle to retrieve his identification card, but that he did not touch the passenger side door, lower the passenger side window or touch any of the evidence including the firearm. Similarly, the sheriff's deputy who arrived at the scene and found the handgun testified that he never made direct contact with defendant, never touched the vehicle and did not touch the handgun, magazine or the glove. He further testified that neither the firearm nor the glove were wet, despite the fact that it had been raining and sleeting earlier that night and the ground around the evidence was wet.
The detective sergeant who responded and investigated the matter testified that he confirmed with other members of law enforcement at the scene that no one had touched the handgun or other evidence prior to his arrival. He explained how he took photographs of the various pieces of evidence and then used gloves to collect and place such evidence in paper bags. After doing so, he testified that he went to defendant's vehicle and discovered a knitted glove that matched the glove found outside on the sidewalk near the handgun and magazine. According to the detective sergeant, the evidence was sealed and placed into an evidence locker until July 2018, when he and another individual test-fired the handgun and ammunition, finding that it was operable. Following the test fire, the detective sergeant searched county records and learned that defendant did not have a pistol permit.
Viewing the evidence in a light most favorable to the People, we conclude that there is a valid line of reasoning and permissible inferences which could lead a rational person to conclude that defendant had possession [*4]of the loaded firearm prior to its disposal (see People v Watts, 215 AD3d at 1173; People v Jenkins, 215 AD3d 1118, 1121-1122 [3d Dept 2023], lv denied 40 NY3d 997 [2023]). Although it is true that neither police officer observed defendant in physical possession of the firearm, both testified that the firearm was recovered in the area where they briefly lost sight of defendant's vehicle as it accelerated down the road. When they next saw defendant's vehicle, each officer testified that they observed the passenger side window had been lowered — which the sheriff's deputy thought was "odd" considering the weather. This testimony combined with the fact that, despite the wet conditions, several members of law enforcement from different agencies each testified that they observed the handgun, magazine and a knitted glove to be dry — and an identical glove was discovered inside of defendant's vehicle — permitted the jury to conclude that defendant had possessed and discarded the firearm when out of sight of the pursuing police officers. When further considering the DNA results tying defendant to the firearm, which was test-fired and found to be operable, this evidence renders the verdict legally sufficient to support defendant's conviction of criminal possession of a weapon in the second degree (see People v Durham, 226 AD3d 1099, 1100-1101, lv denied 42 NY3d 926 [2024]; People v Bryant, 200 AD3d 1483, 1486 [3d Dept 2021], appeal dismissed 38 NY3d 1158 [2022]). As it relates to the tampering with physical evidence conviction, there is also a valid line of reasoning and permissible inferences from which a rational person could have found that defendant knew officers were following him since he passed a patrol car and accelerated around a turn, and, as such, threw the handgun out of the car to conceal it from being used against him as evidence in a proceeding, knowing that he was unlawfully in possession of the firearm (see People v Mansfield, 223 AD3d 1111, 1113-1114 [3d Dept 2024], lv denied 42 NY3d 928 [2024]; People v Thomas, 215 AD3d 1052, 1053 [3d Dept 2023], lv denied 40 NY3d 931 [2023]).
As to defendant's weight of the evidence argument, a different verdict would not have been unreasonable given the circumstantial nature of the evidence and that no one saw defendant possessing the firearm or throwing it out of the window. The jury could have further accepted the defense's theory of cross-contamination, notably because they also heard testimony that the firearm was test-fired before being swabbed for DNA and given the forensic scientist's concession that she could not tell whether the source of defendant's DNA on the handgun was due to a primary transfer (i.e., defendant touched the firearm directly) or a secondary transfer (i.e., another individual touched an item with defendant's DNA on it and then touched the firearm, thereby transferring defendant's DNA to the firearm). However, deferring to the jury's factual determinations and credibility assessments[*5], the proof also demonstrated that the firearm, magazine and knitted glove had only recently been deposited outside because they were dry despite the winter weather. Defendant had just driven past where the evidence was discovered and when the pursuing police officers did not have visual contact with his vehicle. A matching glove found in defendant's vehicle further tied him to the scattered evidence along the roadway and the observation of a lowered passenger side window reasonably suggests the manner in which defendant jettisoned such evidence from his vehicle. Based on the foregoing, when viewing the circumstantial evidence offered at trial in a neutral light, we find that the weight of the evidence supports both convictions (see People v Watts, 215 AD3d at 1174; People v Rivera, 212 AD3d at 947; People v Young, 190 AD3d 1087, 1092 [3d Dept 2021], lv denied 36 NY3d 1102 [2021]; People v Rahaman, 189 AD3d 1709, 1712 [3d Dept 2020], lv denied 36 NY3d 1059 [2021]).
Next, defendant contends that he was denied his statutory right to a speedy trial based upon the People's failure to comply with certain disclosure requirements set forth by CPL 30.30 and 245.20 — specifically, the newly-enacted certificate of compliance requirements (see CPL 30.30 [5]; 245.50 [3]). We disagree. Defendant's position relies on the application of the amendments to New York's discovery and statutory speedy trial rules, which went into effect on January 1, 2020 and replaced the old discovery rules under CPL former article 240 (see L 2019, ch 59, part KKK, § 1). However, during the pendency of this appeal, the Court of Appeals held that the amendment's certificate of compliance requirements did not retroactively apply to cases that were, like here, commenced pre-enactment and which were trial-ready at the time that the amendment took effect (see People v King, ___ NY3d ___, ___, 2024 NY Slip Op 03322 [2024]).[FN1]
Relating to defendant's discovery challenge, although the majority in King did not directly address the applicability of the newly-enacted discovery requirements on cases commenced before January 1, 2020 (see id. at *2 n 2), we find that such determination is unnecessary here because defendant's contentions are belied by the record. Specifically, defendant's contention that the People failed to provide an index or list of the disclosures that were previously provided is without merit, as the People had provided such a list in January 2019 for the first trial, he had already been in possession of all evidence when he defended the first trial and he thereafter remained in possession of such materials until the second trial approximately a year later. Further, critically, defendant admits that the People had not made any disclosures after September 2018 — including none after the first trial in June 2019 — and there is no indication in the record that any discovery had occurred while the amendments were in effect. Moreover, in evaluating defendant's specific allegations [*6]of discovery violations, he also does not identify any further materials that were not timely provided before the second trial. Rather, defendant attempts to characterize the testimony of the forensic scientist relating to secondary transfers of DNA as an undisclosed expert opinion and therefore a violation, but our review of her testimony reveals that she very clearly indicated that she did not have experience with secondary transfers, that her knowledge was drawn from general knowledge of DNA, and that her analysis could "never" determine whether DNA came from a primary or secondary transfer. Accordingly, Supreme Court properly denied defendant's discovery challenges.
Contrary to defendant's contentions, the People established a sufficient chain of custody based on the trial testimony from the various members of law enforcement and technicians handling the firearm, which detailed how the scene was secured, the evidence found, collected and handled from the incident in February 2018 through June 2019 for the first trial (see People v Carter, 131 AD3d 717, 722 [3d Dept 2015], lv denied 26 NY3d 1007 [2015]). Although it is true that there was a gap in the chain of custody between June 2019 until the second trial in June 2021, the senior investigator and detective sergeant both testified that the firearm was the same one that they had worked with during their investigation and for the first trial in 2019. Since the People had established a sufficient chain of custody to that point, "any gaps in the chain of custody go to the weight of the evidence, not its admissibility" (People v Muniz, 193 AD3d 1116, 1118 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 967 [2021]; see People v Meadows, 180 AD3d 1244, 1247 [3d Dept 2020], lv denied 35 NY3d 994 [2020]).
Lastly, we reject defendant's claim that the imposed sentence was "unduly harsh or severe" (CPL 470.15 [6] [b]). Supreme Court considered various factors, including defendant's involvement with the criminal justice system such as his prior felony convictions and periods of incarceration. Based on defendant's lengthy criminal history and his lack of remorse, we see no reason to disturb the sentence imposed by Supreme Court (see People v Jenkins, 215 AD3d at 1122-1123; People v Ripley, 210 AD3d 1198, 1200 [3d Dept 2022], lv denied 39 NY3d 1074 [2023]). To the further extent that defendant claims he was punished for exercising his right to a trial, we disagree, as, although "the sentence imposed was greater than that offered to defendant during plea negotiations, there is nothing in the record establishing that he was punished for asserting his right to trial or that the lengthier sentence ultimately imposed was the result of vindictiveness or retaliation" (People v Mansfield, 223 AD3d at 1117 [internal quotation marks, brackets and citation omitted]). We have examined defendant's remaining contentions and have found them to be without merit or rendered academic.
Garry[*7], P.J., Pritzker, Lynch and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Following the decision by the Court of Appeals, the parties were permitted to submit correspondence regarding the effect of King on this appeal, to which both parties responded. Although defendant initially contended that this case was not governed by King, defendant ultimately conceded this point at oral argument.