People v Watts (2023 NY Slip Op 02144)

People v Watts

2023 NY Slip Op 02144

Decided on April 27, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 27, 2023

111631 113137
[*1]The People of the State of New York, Respondent,
v
Lydell D. Watts, Appellant.

Calendar Date:February 15, 2023

Before:Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and McShan, JJ.

Paul J. Connolly, Delmar, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Zachary S. Persichini of counsel), for respondent.

Clark, J.
Appeals (1) from a judgment of the County Court of Chemung County (Richard W. Rich Jr., J.), rendered April 24, 2019, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree, and (2) by permission, from an order of said court, entered July 23, 2021, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was charged by indictment with the crime of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) in connection with an incident that occurred on September 1, 2018 in the City of Elmira, Chemung County. That incident led to the arrest of three individuals: defendant, the codefendant (see People v Colter, 206 AD3d 1371 [3d Dept 2022], lv denied 38 NY3d 1149 [2022]) and an adolescent offender (hereinafter the AO). Following a jury trial where defendant and the codefendant were tried jointly, defendant was found guilty as charged. Thereafter, defendant was sentenced, as a second felony offender, to a prison term of 10 years followed by five years of postrelease supervision. Defendant then moved pursuant to CPL 440.10 to vacate the judgment of conviction, claiming, as relevant here, that defense counsel was ineffective because he failed to file a timely motion for a Mapp/Dunaway hearing and because he did not call the AO as a witness at trial. The People opposed, and County Court denied the motion without a hearing. Defendant appeals from the judgment of conviction and, by permission, from the order denying his CPL article 440 motion.
On appeal, defendant argues that the verdict is not supported by legally sufficient evidence and that it is against the weight of the evidence. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Harris, 203 AD3d 1320, 1321 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1033 [2022]; see People v Santiago, 206 AD3d 1466, 1467 [3d Dept 2022]). In turn, when "conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Barzee, 190 AD3d 1016, 1017-1018 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]; see People v Martinez, 166 AD3d 1292, 1293 [3d Dept 2018], lv denied 32 NY3d 1207 [2019]).
As relevant here, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person [*2]possesses any loaded firearm" outside of their home or place of business (Penal Law § 265.03 [3]). A "[l]oaded firearm" is defined as "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm" (Penal Law § 265.00 [15]). "A defendant may be found to possess a firearm through actual, physical possession or through constructive possession — the latter of which requires proof that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the weapon is found" (People v Bryant, 200 AD3d 1483, 1486 [3d Dept 2021] [internal quotation marks, brackets, and citations omitted], appeal dismissed 38 NY3d 1158 [2022]; see People v Ruffin, 191 AD3d 1174, 1176 [3d Dept 2021], lv denied 37 NY3d 960 [2021]). "[C]onstructive possession may be established through circumstantial evidence," and does not require proof that a defendant has "exclusive access to the area where a weapon is found" (People v Jemmott, 164 AD3d 953, 956 [3d Dept 2018], lv denied 32 NY3d 1112 [2018]; see People v Bryant, 200 AD3d at 1486). Further, subject to exceptions not applicable here, the presence of a firearm in an automobile is "presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found" (Penal Law § 265.15 [3]; accord People v Kalabakas, 183 AD3d 1133, 1140 [3d Dept 2020], lv denied 35 NY3d 1067 [2020]; People v Rawlinson, 170 AD3d 1425, 1426-1427 [3d Dept 2019], lv denied 33 NY3d 1107 [2019]).
A Chemung County Sheriff's office deputy sheriff testified that, on the evening of September 1, 2018, he observed a blue Ford Explorer make a right-hand turn at a high rate of speed. Around the same time, he heard about an incident that took place at a nearby bar. The deputy stated that he saw four silhouettes inside the vehicle and that he began following it while awaiting a description of the vehicle and individuals involved in the incident. After the vehicle dropped off one person, he continued to follow and observed three silhouettes remained in the vehicle. Soon after, the vehicle pulled into a parking lot and, as the deputy received a description of the vehicle and the subjects involved in the incident, he noticed that the vehicle's occupants had exited the vehicle. While the deputy admitted that he did not see the subjects exit the vehicle, he noted that the vehicle and two of the subjects, a very tall male and a short male, matched the descriptions he had just received. Consequently, the deputy approached defendant, a very tall male who was walking away from the vehicle in the deputy's direction, and asked him to return to the vehicle. The deputy also asked the other two occupants, the codefendant and the AO, both of whom were walking away from the vehicle in the opposite direction, to return to the vehicle. The deputy then saw that the codefendant veered [*3]around a tan sedan parked four parking spots away and made a slight throwing motion, after which the deputy heard a metal object hit the ground. After backup arrived, the deputy handcuffed the three subjects and retrieved an empty Sig Sauer magazine from under the tan sedan.
Two officers from the Elmira Police Department testified that they searched the vehicle and noticed that the front passenger seat was positioned all the way back; they also observed that defendant was approximately 6 feet 6 inches tall. The first officer testified that he searched a gray duffel bag and a black-and-blue backpack located in the backseat of the vehicle. From the duffel bag, he recovered a fully loaded Sig Sauer 9 millimeter magazine; in the backpack, he found a Sig Sauer holster and a school identification card belonging to the AO. The second officer retrieved a Sig Sauer handgun from under the front passenger seat and a left-handed black-and-red work glove from that seat; the glove matched a right-handed black-and-red work glove that he had seen in defendant's right hoodie pocket. An investigator from the Elmira Police Department testified that he test-fired the handgun using the ammunition from the loaded magazine, and that the firearm was operable. Neither defendant nor the codefendant testified.
Defendant contends that his conviction is not supported by legally sufficient evidence because no one witnessed him inside the vehicle, so the automobile presumption was not applicable. While the deputy did not see defendant inside the vehicle or exit the vehicle, he did observe three silhouettes inside the vehicle. After looking away briefly, he saw only three people in the parking lot where the vehicle parked just moments before — defendant, the codefendant and the AO. Further, defendant's possession of a glove matching a glove found in the front passenger seat, as well as that seat's position, allowed the jury to infer that defendant, who is very tall, occupied that seat moments before. These facts permitted the jury to conclude that defendant had dominion and control over the firearm, which was located underneath his seat, and the ammunition, which was located in a duffel bag behind his seat, such that he constructively possessed them — including through the automobile presumption. Further, the firearm and the ammunition were both test-fired and found to be operable. Viewing the evidence in the light most favorable to the People, the conviction is supported by legally sufficient evidence (see People v Sostre, 172 AD3d 1623, 1625-1626 [3d Dept 2019], lv denied 34 NY3d 938 [2019]; People v Ware, 28 AD3d 1124, 1125 [4th Dept 2006], lv denied 7 NY3d 852 [2006]).
As to defendant's argument that the verdict is against the weight of the evidence, a different outcome would not have been unreasonable. No witnesses placed defendant in the vehicle, and the jury could have rejected the theory that defendant constructively possessed the firearm and the ammunition. However[*4], deferring to the jury's credibility determinations, as we must, the proof showed that defendant was present in the vehicle shortly before the discovery of the firearm and the loaded magazine and that the firearm matched the loaded magazine, as well as the empty magazine. While the jury could have rejected the People's theory of the case, the verdict is underscored by the implicit finding that defendant constructively possessed the firearm and the ammunition, such that his conviction is not against the weight of the evidence (see People v Smith, 177 AD3d 1190, 1190-1191 [3d Dept 2019], lv denied 34 NY3d 1163 [2020]; People v Worthington, 150 AD3d 1399, 1400-1402 [3d Dept 2017], lv denied 29 NY3d 1095 [2017].
Next, we turn to defendant's contention that County Court erred in dismissing juror No. 1 without conducting a reasonably thorough inquiry. When a juror is unable to continue serving due to illness, "the court shall make a reasonably thorough inquiry concerning such illness . . . and shall attempt to ascertain when such juror will be appearing in court. If such juror fails to appear, or if the court determines that there is no reasonable likelihood such juror will be appearing, in court within two hours of the time set by the court for the trial to resume, the court may presume such juror is unavailable for continued service and may discharge such juror" (CPL 270.35 [2] [a]). Prior to discharging a juror due to illness, the court must allow the parties an opportunity to be heard, and it "shall place on the record the facts and reasons for its determination that such juror is ill" (CPL 270.35 [2] [b]).
After juror No. 1 was selected and sworn in, but before jury selection had concluded, County Court made a record that juror No. 1 "needed to go home due to some health issues" but was advised, and agreed, to return the next day at 9:00 a.m. However, as of 9:28 a.m. the next morning, the court noted that juror No. 1 had not returned and, because the juror had left ill the prior day, the court found it "necessary to just replace her with the first alternate at this point." Defense counsel then registered an exception to the court's replacement of juror No. 1 and, unlike the codefendant (see People v Colter, 206 AD3d at 1372), we find that defendant preserved this question for appellate review (see CPL 470.05 [2]; People v Bailey, 32 NY3d 70, 79-80 [2018]). Thereafter, County Court failed to conduct any inquiry regarding the absence of juror No. 1. When asked whether the court had received any notification from the juror, the court responded, "No. Basically, I don't have juror number one. She's just plain not here. She left early yesterday ill . . . . So, we are going to replace juror number one." Although replacement of a juror is generally left to the court's discretion, "[w]ithout a reasonably thorough inquiry, . . . the exercise of the court's discretion on the ultimate issue of whether or not to replace the juror [was] uninformed" (People [*5]v Jeanty, 94 NY2d 507, 516 [2000]). County Court was certainly not required to wait two hours before substituting juror No. 1, but, on the record before us, it impermissibly presumed that she was "unavailable for continued service without conducting the requisite reasonably thorough inquiry and determining that [the] juror [was] not likely to appear within two hours" (People v Lang, 35 NY3d 222, 226 [2020] [internal quotation marks and citation omitted]). As a result of this deficient inquiry, we reverse defendant's conviction and remit this matter for a new trial (see CPL 270.35 [2] [a]; People v Lang, 35 NY3d at 226; People v Sargeant, 239 AD2d 444, 444 [2d Dept 1997]; compare People v Wilkinson, 166 AD3d 1396, 1398-1399 [3d Dept 2018], lv denied 32 NY3d 1179 [2019]; People v Tyrell, 82 AD3d 1352, 1356 [3d Dept 2011], lv denied 17 NY3d 810 [2011]).
In light of such determination, defendant's appeal from the order denying his CPL 440.10 motion has been rendered academic. Were we to address such claims, we would find that County Court should have granted defendant a hearing to determine whether counsel was ineffective for failing to call the AO to testify at trial (see People v Matteson, 166 AD3d 1300, 1301 [3d Dept 2018]; People v Sposito, 140 AD3d 1308, 1312 [3d Dept 2016], affd 30 NY3d 1110 [2018]; People v Hennessey, 111 AD3d 1166, 1168-1169 [3d Dept 2013]). However, counsel's failure to make a timely request for a Mapp/Dunaway hearing was not ineffective assistance, as that a motion had "little or no chance of success" (People v Calafell, 211 AD3d 1114, 1120 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]; see People v Machia, 206 AD3d 1272, 1278 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]). Defendant's remaining arguments, to the extent that they have not been rendered academic by our determination, have been reviewed and found to lack merit.
Garry, P.J., Lynch and McShan, JJ., concur.
Reynolds Fitzgerald, J. (concurring).
I agree with the majority but find it necessary to write a concurrence in light of this Court's decision in the codefendant's appeal, People v Colter (206 AD3d 1371 [3d Dept 2022], lv denied 38 NY3d 1149 [2022]). Although we reached a different result in that case, the two decisions are not inconsistent, and the appeals are distinguishable. The Court determined in People v Colter that the issue related to the replacement of juror No. 1 was unpreserved, and, thus, the majority did not address the merits as related to this issue (id. at 1372). In addressing the issue in the context of an ineffective assistance of counsel claim (id. at 1375-1376), the Court cited People v Bostic (174 AD3d 1135 [3d Dept 2019], lv denied 34 NY3d 1015 [2019]). That case recognized that to support a claim of ineffective assistance of counsel, a defendant must demonstrate "the absence of strategic or other legitimate explanations for counsel's alleged shortcomings" (id. at 1138 [internal quotation marks and citations omitted]). In People v [*6]Colter, the defendant did not establish the absence of strategy in counsel's failure to object to the discharge of juror No. 1 and, as such, the ineffective assistance claim failed. In contrast, here the juror issue was preserved and is directly before the Court.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Chemung County for a new trial.
ORDERED that the appeal from the order is dismissed, as academic.