People v Grandoit (2025 NY Slip Op 05720)

People v Grandoit

2025 NY Slip Op 05720

Decided on October 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 16, 2025

CR-22-1916
[*1]The People of the State of New York, Respondent,
v
Shamal Grandoit, Appellant.

Calendar Date:September 8, 2025

Before:Clark, J.P., Aarons, Lynch, Ceresia and Fisher, JJ.

Shane A. Zoni, Public Defender, Hudson (Bryan Bergeron of counsel), for appellant.
Christopher Liberati-Conant, District Attorney, Hudson (Kathleen Y. Anderson of counsel), for respondent.

Clark, J.P.
Appeal from a judgment of the County Court of Columbia County (Jonathan Nichols, J.), rendered August 8, 2022, convicting defendant upon his plea of guilty of the crime of criminal possession of a weapon in the second degree.
In the early morning hours of December 25, 2020, two deputy sheriffs in the Columbia County Sheriff's office initiated a traffic stop of a vehicle that defendant was driving erratically. While conducting the stop, the deputies learned that defendant did not have a valid driver's license. As his unlicensed operation was merely a violation, defendant was not arrested. The deputies afforded defendant the opportunity to coordinate a means of moving him and his vehicle from the scene to avoid the deputies needing to have the vehicle towed. Although he was able to arrange for a friend to come pick him up, defendant could not secure transport of his vehicle. As a result, the deputies informed defendant that they would likely need to tow the vehicle to a safer location. In what was later described as preparation for the tow, one of the deputies began to search defendant's vehicle, wherein he discovered a handgun under the driver's seat. Defendant was then arrested and subsequently charged by indictment with criminal possession of a weapon in the second degree. Following unsuccessful motions to dismiss on speedy trial grounds and to suppress the gun, defendant pleaded guilty to the single count in the indictment and was sentenced to a prison term of 3½ years, to be followed by 2½ years of postrelease supervision. Defendant appeals.
Defendant argues that the People's certificate of compliance (hereinafter COC) was illusory and, thus, their statement of trial readiness was invalid because they failed to turn over certain discovery materials in a timely manner.[FN1] The single-count indictment charged defendant with a felony, giving the People six months from the filing of the initial accusatory instrument to declare their readiness for trial (see CPL 30.30 [1] [a]). "To be deemed actually ready for trial, the People's readiness declaration must be accompanied or preceded by the filing of a certificate of good faith compliance with the disclosure requirements of CPL 245.20, and the presiding court must, after an on-the-record inquiry, be satisfied of the People's actual readiness" (People v McCarty, 221 AD3d 1360, 1361 [3d Dept 2023] [citations omitted], lv denied 40 NY3d 1093 [2024]; see People v James, 229 AD3d 1008, 1009-1010 [3d Dept 2024]).[FN2] The People must exercise due diligence and make reasonable efforts to ascertain the existence of discoverable material and disclose such material to the defendant (see CPL former 245.50 [1]; People v James, 229 AD3d at 1010). "Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided [*2]and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (People v Bay, 41 NY3d 200, 212 [2023]; accord People v Contompasis, 236 AD3d 138, 146 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]). Even after the People declare their readiness for trial, they maintain a "duty to expeditiously disclose any CPL 245.20 materials that were previously unknown or not in the People's possession during the automatic disclosure period, and a valid [COC] and readiness declaration will not be rendered illusory by subsequent diligent disclosures made in good faith" (People v McCarty, 221 AD3d at 1361-1362).
Here, the People turned over a considerable amount of discovery on three different occasions between December 29, 2020 and May 24, 2021, including dashcam footage and body camera footage from one of the two deputy sheriffs involved in defendant's arrest. The People then filed a COC on May 24, 2021 and declared their readiness for trial during defendant's arraignment on August 9, 2021. During that appearance, defendant's counsel objected, noting that he believed there were "records missing as to videos" without further specification, but admitted that he never informed the People of the supposed missing discovery. County Court determined that the People were ready for trial. Two months later, defendant moved to dismiss the indictment on speedy trial grounds, alleging that the People's failure to disclose, in relevant part, the second deputy's body camera footage deemed their COC illusory. County Court acknowledged that the footage should have been turned over but ultimately denied the motion to dismiss.
Upon considering the relevant factors, we agree with County Court that the People's COC was not illusory. Indeed, the People provided defendant with significant discovery within days of his arrest and continued to provide additional discovery until filing their COC. Although the second deputy's body camera footage should have been disclosed prior to the People declaring their readiness for trial (see CPL 245.20 [1] [g]),[FN3] "the Legislature did not intend to require or anticipate a perfect prosecutor to discharge the obligations imposed by CPL article 245" (People v Contompasis, 236 AD3d at 149 [internal quotation marks and citation omitted]). With that in mind,this singular item of outstanding discovery is not enough to invalidate the People's COC (see People v Reynolds, 239 AD3d 1098, 1099 [3d Dept 2025]). Further, we recognize that when the People were made aware of the missing body camera footage, which was not until defendant filed the motion to dismiss, they quickly obtained the footage and disclosed it to defendant. In that regard, they fulfilled their duty to exercise continued due diligence in providing defendant with necessary discovery as they became aware of such [*3](see People v Graham, 233 AD3d 1361, 1366 [3d Dept 2024], lv denied 43 NY3d 944 [2025]). Defendant's counsel acknowledged during the arraignment his own duty to make the People aware of missing discovery and further acknowledged his failure to do so (see People v Reynolds, 239 AD3d at 1099; see also CPL 245.35 [1]). Following the arraignment, defendant's counsel went an additional two months without informing the People of the missing discovery to which he had alluded during that earlier appearance. Based on the foregoing, we find that the People provided reasonable disclosures prior to filing their initial COC and subsequent filing in good faith (see People v Williams, 224 AD3d 998, 1006-1007 [3d Dept 2024], lv denied 41 NY3d 1021 [2024]; People v McCarty, 221 AD3d at 1363). Given the valid COC and statement of trial readiness within six months of the commencement of this criminal proceeding, defendant's related speedy trial challenge is also without merit (see People v Contompasis, 236 AD3d at 151).
Defendant next challenges County Court's denial of his motion to suppress the gun that was discovered in his vehicle, claiming that it was found through an illegal, warrantless search. Initially, it is clear from the second deputy's body camera footage that, although the deputies extensively discussed the possibility of the vehicle needing to be towed and an inventory completed, they justified their search of defendant's vehicle, at the time of the search, through the plain view doctrine. Indeed, the second deputy approached the vehicle and walked its perimeter while aiming his flashlight inside — an action more closely resembling a plain view search than an inventory search.[FN4] Further, the second deputy returned to the patrol vehicle and asked defendant about the rolling papers in the front seat and "glassine" material that was crumpled inside a soda can, something he would not have done if he were actually conducting an inventory. Defendant informed the second deputy that the material in question was snack wrappers that he intended to throw away; however, the second deputy told him he was going to check it out because, in his experience, it is "never just snacks." The second deputy then entered defendant's vehicle to investigate the contents of the soda can and discovered the gun under the driver's seat. Shortly thereafter, the first deputy can be heard on the phone with the deputies' supervisor, justifying the search as a plain view search. The second deputy also relayed his motivations to the first deputy, at least twice, noting that he believed defendant "seemed nervous," prompting him to want to "check it out." It was not until half an hour after the gun was found that the second deputy indicated to another officer that he would do the tow inventory.
In response to defendant's motion to suppress, however, the People argued not that the discovery of the gun was proper pursuant to a plain view search, but that it was proper pursuant to a valid inventory [*4]search. The People's argument is unavailing. "To be constitutionally valid, an inventory search must be [reasonable and] conducted according to a familiar routine procedure" (People v Kabia, 197 AD3d 788, 789 [3d Dept 2021] [internal quotation marks and citation omitted], lv denied 37 NY3d 1162 [2022]; see People v Jones, 185 AD3d 1159, 1160 [3d Dept 2020]). The established procedure should be designed to "meet the legitimate objectives of the search," such as protecting the owner's property and insuring police against claims of lost or stolen property, "while limiting the discretion of the officer in the field"(People v Espinoza, 174 AD3d 1062, 1063 [3d Dept 2019] [internal quotation marks and citations omitted]). Here, the second deputy failed to adhere to the requirements set forth in the relevant inventory policy. Namely, he did not obtain the approval of his shift supervisor before beginning the alleged inventory procedure. Further, although not explicitly written in the policy, the second deputy also admitted that he deviated from normal procedure when he failed to complete the inventory report as he conducted the inventory.
To justify the second deputy's deviations from the standardized inventory policy, the deputies' supervisor testified that defendant's vehicle was not being impounded, but instead, just towed. According to the supervisor, the policy distinguishes between impounded vehicles and towed vehicles, the former of which are defined as vehicles "seized and held in the custody of the" Columbia County Sheriff's office. Although the majority of the policy pertains to impounded vehicles, the supervisor noted that a single sentence at the end of the policy sets forth the applicable standard regarding vehicles merely being towed. That sentence requires only that an inventory report be completed prior to the vehicle being "released from the scene." However, the supervisor's explanation — that defendant's vehicle was not impounded — further undermines the People's position that the inventory search was proper. Indeed, an inventory search is only valid where " 'the subject vehicle was lawfully impounded at the time of the inventory search' " (People v Gray, 234 AD3d 1130, 1131 [3d Dept 2025] [emphasis added], quoting People v Mortel, 197 AD3d 196, 214 [2d Dept 2021], lv denied 37 NY3d 1097 [2021]). Even assuming it was proper to conduct an inventory on a vehicle that was not impounded but simply towed, a single sentence pertaining to towed vehicles that only dictates that an inventory be completed does not constitute "established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably" (People v Padilla, 21 NY3d 268, 272 [2013] [internal quotation marks and citation omitted; emphasis added], cert denied 571 US 889 [2013]; see People v Jones, 185 AD3d at 1160-1161).[FN5] Accordingly, defendant's motion to suppress the gun should have been granted.
To the extent [*5]that we have not addressed them herein, defendant's remaining contentions have been considered and deemed meritless.
Aarons, Lynch, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is reversed, on the law, motion to suppress granted to the extent of suppressing the handgun, plea vacated and matter remitted to the County Court of Columbia County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Defendant alleges that the People failed to turn over four pieces of evidence subject to the automatic discovery statute. However, three of those items alleged to be missing — a copy of the indictment, proof of service of the notice of grand jury proceedings and the sheriff's office's impound inventory policy — were either turned over to defendant prior to the People filing their COC or were not discoverable under the statute (see CPL former 245.20 [1], [2]). Contrary to defendant's position, the automatic discovery statute does not contemplate the discovery of the indictment itself. Instead, pursuant to CPL 210.15 (1), defendant was entitled to receive, and did so receive, a copy of the indictment from the People at the time of his arraignment.

Footnote 2: CPL article 245 was recently amended, with the amendments effective August 7, 2025 (see L 2025, ch 56, part LL, §§ 1-4, 8). In deciding this issue on appeal, we have not applied the new amendments.

Footnote 3: In their affirmation in opposition to defendant's motion to dismiss, the People explained that the Columbia County Sheriff's office, at the time of defendant's arrest, was implementing a body camera pilot program consisting of, generally, one body camera per patrol car. The sheriff's office did not have enough body cameras to provide all deputies with one during that time and, therefore, the People did not know whether or not the second deputy had a body camera at the time of defendant's arrest.

Footnote 4: Notably, this was the second deputy's return to defendant's vehicle several minutes after defendant was secured in the back seat of the patrol vehicle. Both deputies had an opportunity during the initial traffic stop to look inside defendant's vehicle and, at that time, neither noted any suspicious material in plain view.

Footnote 5: "[I]ncriminating evidence may be a consequence of an inventory search, [but] it should not be its purpose" (People v Espinoza, 174 AD3d at 1063 [internal quotation marks and citations omitted]; see People v Gray, 234 AD3d at 1131). The second deputy commented on defendant's nervous demeanor to justify his actions, suggesting that his motivation was improper and that the inventory was a pretext to search defendant's vehicle. This further evidences that the policy failed in its requirement to limit an officer's discretion in the field.