People v Riddick (2025 NY Slip Op 05992)

People v Riddick

2025 NY Slip Op 05992

Decided on October 30, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 30, 2025

CR-22-1970
[*1]The People of the State of New York, Respondent,
v
Hassan Riddick, Appellant.

Calendar Date:September 5, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Fisher and Mackey, JJ.

Steven M. Sharp, Albany, for appellant.
Lee C. Kindlon, District Attorney, Albany (Emily Schultz of counsel), for respondent.

Pritzker, J.P.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered May 6, 2022 in Albany County, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree.
Defendant was convicted, after trial, of murder in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree stemming from a shooting that occurred on June 18, 2020 in the City of Albany. After an unsuccessful CPL 330.30 motion, Supreme Court sentenced defendant, as a persistent felony offender, to concurrent prison terms of 25 years to life on the murder and criminal possession of a weapon in the second degree convictions and a consecutive prison term of 3½ to 7 years on the third degree criminal possession of a weapon conviction. Defendant appeals.
Defendant challenges the verdict on legal sufficiency and weight of the evidence grounds. Specifically, defendant argues that the People did not sufficiently prove identity. As relevant to the appeal, "[a] person is guilty of murder in the second degree when[,] [w]ith intent to cause the death of another person, he [or she] causes the death of such person or of a third person" (Penal Law § 125.25 [1]). A person is guilty of criminal possession of a weapon in the second degree when he or she "possesses any loaded firearm" and such possession did not take place in such person's home or place of business (Penal Law § 265.03 [3]). Finally, a person is guilty of criminal possession of a weapon in the third degree when, as relevant here, such person has previously been convicted of a crime and possesses an electronic stun gun (see Penal Law §§ 265.01 [1]; 265.02 [1]). An electronic stun gun is defined as "any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person" (Penal Law § 265.00 [15-c]).
Defendant's primary argument on appeal as to the legal sufficiency and weight of the evidence is that the People did not sufficiently establish his identity as the shooter relative to the counts charging him with murder in the second degree and criminal possession of a weapon in the second degree. We disagree. Security camera footage captured the shooter getting out of a car owned by defendant's mother and shooting the victim. A cell phone owned by defendant was found in the street adjacent to where the shooting occurred, and, in the video, an item can be seen falling onto the ground as the shooter gets out of defendant's mother's vehicle. The People then presented a continuous string of security camera footage tracking that same car to the time of the murder, beginning with footage showing defendant purchasing a milkshake at a Stewart's Shop approximately 30 minutes before the shooting. The People corroborated this footage [*2]by entering into evidence bank records showing that defendant's debit card was used to purchase the milkshake and DNA testing results which found that defendant's DNA was on the straw of the Stewart's cup found in his mother's vehicle after the murder occurred. The People presented additional DNA evidence indicating that defendant wore a ski mask, also found in his mother's car, which matched the face covering worn by the shooter in the surveillance video. Apart from the video and DNA evidence identifying defendant, the People additionally presented evidence illustrating defendant's motive and consciousness of guilt. Thus, "[b]ased on the foregoing, when construing the evidence in the light most favorable to the People as we must, a rational person could conclude that the shooter's identity was sufficiently proven to be defendant" (People v Slivienski, 204 AD3d 1228, 1234 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]; see People v Grady, 233 AD3d 1369, 1371-1372 [3d Dept 2024], lv denied 43 NY3d 963 [2025]). We have reviewed defendant's assertions as to the legal sufficiency of the remaining elements of the criminal possession of a weapon in the second and third degree convictions and find them, to the extent preserved, to be similarly lacking in merit. As to the weight of the evidence, although a different verdict would not have been unreasonable given defendant's testimony that he was not the shooter but that it was another individual to whom he lent his mother's car, "when viewing all of the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the weight of the credible evidence supports the conclusion that defendant was the shooter" (People v Slivienski, 204 AD3d at 1235; see People v Moore, 223 AD3d 1085, 1093 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]).
Defendant also challenges search warrants for his cell phone, mother's car and Facebook account. "Preliminarily, [as to the search warrant for defendant's cell phone,] a defendant seeking suppression of evidence has the burden of establishing standing by demonstrating a legitimate expectation of privacy in the premises or object searched" (People v Slivienski, 204 AD3d at 1236 [internal quotation marks, brackets and citations omitted]; see People v Boyd, 206 AD3d 1350, 1352 [3d Dept 2022], lv denied 38 NY3d 1149 [2022]). In an attorney affirmation in support of defendant's omnibus motion, it was averred that defendant "did own [the phone] but that he did not abandon [it] at the scene [of the shooting]." During the Mapp hearing, defendant's attorney argued that the phone was not abandoned, despite being recovered from the street, because he did not demonstrate "an unequivocal intention . . . to abandon the property." Rather, the phone was dropped and defendant did not know he dropped it. Defendant's attorney conceded that there were not any sworn assertions as to this, and no evidence was proffered at the hearing that it had been dropped. Thus, inasmuch [*3]as "defendant had no reasonable expectation of privacy in the public street" where the cell phone was found, "he lacks standing to challenge the constitutionality of the seizure" (People v Lee, 120 AD2d 678, 678 [2d Dept 1986], lv denied 68 NY2d 669 [1986]; see People v Fabelo, 277 AD2d 130, 130-131 [1st Dept 2000], lv denied 96 NY2d 799 [2001]).
As to the search warrant for defendant's mother's car, assuming without deciding that defendant had standing to challenge the search warrant, we agree with Supreme Court's alternative determination that the search warrant for defendant's mother's car was sufficiently particularized. "While particularity of a search warrant is certainly required, this does not mean that hypertechnical accuracy and completeness of description must be attained but rather, from the standpoint of common sense, that the descriptions in the warrant and its supporting affidavits be sufficiently definite to enable the searcher to identify the persons, places or things that the [m]agistrate has previously determined should be searched or seized" (People v Thomas, 155 AD3d 1120, 1121 [3d Dept 2017] [internal quotation marks, brackets and citations omitted], lv denied 31 NY3d 1018 [2018]). Here, the search warrant authorized the seizure of "[e]vidence, consisting of trace evidence, including but not limited to . . . Deoxyribonucleic Acid (DNA)." This described the evidence to be seized with sufficient particularity and, when viewed from the requisite standpoint of common sense, the seizure of items of clothing to be processed for DNA does not invalidate the warrant given the stated purpose of seizing this evidence — i.e., to identify the shooter — is sufficiently particularized to indicate what evidence was authorized to be seized (see People v Harris, 29 AD3d 1027, 1028-1029 [3d Dept 2006]; see generally People v Dominique, 229 AD2d 719, 720 [3d Dept 1996], affd 90 NY2d 880 [1997]). Finally, as to the search warrant for defendant's Facebook account, we have reviewed the record and find that the challenged warrant was sufficient to support a reasonable belief that evidence of a crime may be found on defendant's Facebook page (see People v Alexander, 207 AD3d 878, 880-881 [3d Dept 2022], lv denied 39 NY3d 984 [2022]).
Defendant contends that Supreme Court erred in introducing certain evidence of defendant's prior uncharged crimes. "In reviewing a Molineux ruling, this Court must first assess whether the People have identified some issue, other than mere criminal propensity, to which the evidence is relevant . . . . As a general rule, evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Henehan, 238 AD3d 1336, 1339 [3d Dept 2025] [internal quotation [*4]marks, brackets, emphasis and citations omitted], lv denied 43 NY3d 1055 [2025]). "Once a relevant purpose for the evidence is demonstrated, the question of whether the probative value of the evidence outweighs any prejudice to the defendant rests within the trial court's sound discretion" (People v Smith, 237 AD3d 1367, 1375 [3d Dept 2025] [internal quotation marks, brackets and citations omitted], lv denied 43 NY3d 1059 [2025]; see People v Hebert, 218 AD3d 1003, 1009 [3d Dept 2023], lv denied 40 NY3d 1080 [2023]).
In their Molineux proffer, the People requested to admit, among other things, text messages between defendant and the codefendant wherein they discuss criminal activity and firearms, ammunition or guns. The People also requested to introduce various entries from defendant's Facebook page depicting weapons, suggesting violence to other individuals and calling one individual a "rat" for allegedly speaking with law enforcement. The People's proffered purpose in admitting into evidence the text messages was to establish the type of relationship maintained by defendant and the codefendant and to establish defendant's access to guns. During a pretrial Molineux hearing, the People elaborated on their requests, including that they were seeking to introduce a specific conversation between defendant and the codefendant relating to the latter's ability to get a "Nina," meaning a 9 millimeter handgun, and defendant then purportedly discussed whether a .38 caliber bullet would fit in the handgun to show that defendant had access to a 9 millimeter, which was the weapon used in the present offense. The second piece of Molineux evidence was a separate conversation between defendant and the codefendant in which they discuss a wish that riots would begin in Albany, so the two individuals could break into jewelry and gun stores. The third piece of Molineux evidence was an entry on defendant's Facebook page regarding a potential witness in the case, stating that the witness was cooperating with the police and tagging said witness in the post for the purpose of showing consciousness of guilt and identity. Defendant opposed the proffered evidence based upon, among other things, the potential for prejudice outweighing any probative value.
Supreme Court permitted the People to introduce evidence regarding the "Nina" and subsequent discussion regarding .38s as well as some evidence regarding defendant's conversations as to looting during potential riots. The court did limit the text messages to avoid prejudice caused by repetitiveness. The court also admitted the relevant Facebook post as evidence of defendant's identity and involvement in the case. Other Molineux evidence was precluded. Contrary to defendant's assertion, the court did not abuse its discretion in its Molineux ruling. Regarding the messages between defendant and his codefendant relating to a "Nina" and .38 caliber bullets, it is direct evidence that defendant had access to a 9 millimeter firearm[*5], the same firearm used in the charged crimes, and thus tended to prove defendant's identity as the shooter, which was contested at trial (see People v Slivienski, 204 AD3d at 1238-1239). Regarding defendant's Facebook post, the court did not abuse its discretion in allowing the introduction of the post into evidence, or questioning of defendant regarding the post, as it "tend[ed] to support a material issue or corroborate[d] other evidence in the case," specifically defendant's identity as the shooter (People v Ruffin, 191 AD3d 1174, 1179 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 960 [2021]). Additionally, inasmuch as the only contested element at trial for the charges of murder in the second degree and criminal possession of a weapon in the second degree was defendant's identity, the probative value of the foregoing evidence outweighed the danger of unfair or undue prejudice (see People v Slivienski, 204 AD3d at 1239). Regarding the other text messages between defendant and the codefendant, we discern no abuse of discretion as these messages were material to defendant and the codefendant's relationship and, thus, the identity of both individuals in the security video (see People v Ruffin, 191 AD3d at 1179).
Defendant also contends that Supreme Court erred in admitting prior bad act evidence that was initially precluded by way of the Molineux ruling, but was subsequently allowed in based upon defendant having opened the door. The admission of previously precluded prior bad act evidence "on the basis that defendant opened the door [is] not subject to a traditional Molineux analysis . . . . Instead, based upon the manner in which the evidence was introduced, the proper inquiry distill[s] to whether, and to what extent, the evidence or argument said to open the door was incomplete and misleading, and whether the otherwise inadmissible evidence was reasonably necessary to correct the misleading impression" (People v Kane, 232 AD3d 1064, 1066 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]). Such analysis is also implicated when the defendant testifies to facts that are in conflict with evidence precluded under a court's Sandoval ruling (see People v Fardan, 82 NY2d 638, 646 [1993]; see generally People v Lowndes, 167 AD3d 1228, 1230 [3d Dept 2018]).
Defendant testified at trial, and on cross-examination the People asked him whether the introduced text messages reflected that the codefendant told defendant that he had a 9 millimeter handgun, which defendant denied. Rather, defendant testified that the term "nena" referred to Jordan 9 sneakers, and that the "38" referred to three-eighths of marihuana in slang terms, which defendant stated he was planning on sneaking into a prison for a friend. Additionally, defendant acknowledged that he and the codefendant were excited for Albany to riot, so they could loot gun stores. However, when asked if defendant wished to loot the stores in order [*6]to sell the guns, defendant replied that he did wish to sell them, but before that point was not selling any firearms. After an off-the-record bench conference, the People presented and inquired into a previously precluded text message between defendant and the codefendant regarding buying and selling other firearms. Then, also during the People's cross-examination of defendant, defendant was presented with a photograph sent to him by the codefendant and was asked whether the handgun shown was a 9 millimeter, to which defendant testified that he was not sure because he is not familiar with guns. After another off-the-record bench conference, the People asked defendant specifically if he had been incarcerated upon a conviction of criminal possession of a weapon for a handgun.[FN1] Defendant responded in the affirmative but repeated that he does not know specific handguns apart from each other based only on how they look. The record later reflected that during the relevant bench conferences, the People made an application that defendant opened the door regarding the issues of his relationship with the codefendant pertaining to buying and selling firearms and regarding defendant's familiarity with firearms.
Supreme Court granted the People's application in both instances, finding that defendant's testimony denying that he sold or bought guns with the codefendant and was unfamiliar with handguns opened the door into the previously precluded evidence. Given the foregoing, Supreme Court providently exercised its discretion in allowing said questioning under an opening-the-door theory, given that defendant's testimony was in direct conflict with precluded evidence and was reasonably necessary to correct the impression that defendant was unfamiliar with how to obtain a handgun or inexperienced in their use (see People v Hebert, 218 AD3d at 1011; People v George, 199 AD3d 1064, 1066 [3d Dept 2021], lv denied 37 NY3d 1146 [2021]). Additionally, the questioning regarding these issues was brief in duration, limited in scope and Supreme Court provided a limiting instruction that the testimony was not proof that defendant had a propensity to commit any crimes and was only relevant for defendant's familiarity with handguns, relationship with his codefendant and credibility (see People v Hebert, 218 AD3d at 1012).
Defendant's argument that Supreme Court erred in allowing a custodian of records from Facebook to testify remotely via a two-way closed circuit call because it violated defendant's right to confrontation is not preserved as defendant did not raise this argument before Supreme Court; rather, he only argued that the People had not established exceptional circumstances warranting remote testimony (see generally People v Davis, 200 AD3d 1200, 1203 [3d Dept 2021]).
Finally, we reject defendant's challenge to the sentence as harsh and excessive and decline to reduce it in the interest of justice (see People v Alvarez, 238 AD3d 1266, 1270 [3d Dept 2025], lv denied [*7]44 NY3d 981 [2025]; People v Brisman, 236 AD3d 1092, 1094-1095 [3d Dept 2025]). Any remaining contentions not specifically addressed herein have been reviewed and determined to lack merit.
Reynolds Fitzgerald, Fisher and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: It is noted that defendant's actual conviction was for attempted criminal possession of a weapon.