People v Gerhard (2025 NY Slip Op 06761)

People v Gerhard

2025 NY Slip Op 06761

Decided on December 4, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 4, 2025

CR-23-1050 CR-23-1051
[*1]The People of the State of New York, Respondent,
v
Jason E. Gerhard, Appellant.

Calendar Date:October 8, 2025

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Angela Kelley, East Greenbush, for appellant.
F. Paul Battisti, District Attorney, Binghamton (Mary E. Saitta of counsel), for respondent.

McShan, J.
Appeals (1) from a judgment of the County Court of Broome County (Joseph Cawley, J.), rendered April 20, 2023, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the third degree, and (2) from a judgment of said court, rendered April 20, 2023, which revoked defendant's probation and imposed a sentence of imprisonment.
In February 2022, law enforcement responded to a reported burglary at a residence in the Town of Chenango, Broome County. At the scene, officers encountered defendant inside the residence — his ex-girlfriend's home — and, after coaxing defendant out, he was detained by law enforcement pursuant to Mental Hygiene Law § 9.41. A subsequent search of the residence revealed, among other things, a revolver lying on the kitchen table. Thereafter, in May 2022, defendant was charged by indictment with criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Defendant was also charged with violating probation because the aforementioned incident occurred while he was on probation for a 2021 conviction of attempted criminal possession of a weapon in the second degree. Following a jury trial, defendant was acquitted on the charge of criminal possession of a weapon in the second degree and convicted of criminal possession of a weapon in the third degree. In light of his conviction, defendant pleaded guilty to the probation violation at his sentencing hearing and County Court sentenced him, as a second felony offender, to a prison term of 3 to 6 years for his conviction of criminal possession of a weapon in the third degree; the court then revoked defendant's probation and resentenced him to a consecutive prison term of four years, to be followed by three years of postrelease supervision, for the 2021 conviction. Defendant appeals from the judgment of conviction, as well as the judgment revoking his probation and resentencing him on the 2021 conviction.
We affirm. We turn first to defendant's legal sufficiency and weight of the evidence arguments. "When assessing the legal sufficiency of a jury verdict, [this Court] view[s] the facts in the light most favorable to the People and examine[s] whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Dillon,231 AD3d 1352, 1353 [3d Dept 2024] [internal quotation marks and citations omitted]; accord People v White,231 AD3d 1429, 1429 [3d Dept 2024], lv denied 42 NY3d 1082 [2025]). "In turn, when conducting a weight of the evidence review, [this Court] must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence[*2]" (People v Dillon,231 AD3d at 1353 [internal quotation marks and citations omitted]; see People v Baez,232 AD3d 1044, 1045 [3d Dept 2024]). As relevant here, to sustain a conviction for criminal possession of a weapon in the third degree, the People must demonstrate that the defendant, having been previously convicted of any crime, knowingly possessed a firearm (see Penal Law §§ 265.01 [1]; 265.02 [1]; see also People v Ruffin, 191 AD3d 1174, 1176 [3d Dept 2021], lv denied 37 NY3d 960 [2021]; People v McCoy, 169 AD3d 1260, 1262 [3d Dept 2019], lv denied 33 NY3d 1033 [2019]).
The thrust of defendant's arguments center upon his assertion that the People failed to establish that he possessed the revolver that was discovered in the ex-girlfriend's home shortly after defendant was detained.[FN1] On that element, the People proceeded under a theory of constructive possession, which entails consideration of "the defendant's proximity to the [firearm], whether the defendant had keys to the location where the [firearm] was found, whether the [firearm] was in plain view and whether there is witness testimony that the [firearm] belonged to the defendant" in assessing whether the defendant had dominion and control over the firearm (People v Durfey,170 AD3d 1331, 1332 [3d Dept 2019] [internal quotation marks, ellipsis and citation omitted], lv denied 34 NY3d 980 [2019]; accord People v Kendricks,226 AD3d 1150, 1151 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]; see People v Watts, 215 AD3d 1170, 1171-1172 [3d Dept 2023]). "Constructive possession may be established through circumstantial evidence, and does not require proof that a defendant has exclusive access to the area where a weapon is found" (People v Watts, 215 AD3d at 1172 [internal quotation marks, brackets and citations omitted]; accord People v Everett, 231 AD3d 1296, 1297 [3d Dept 2024], lv denied 42 NY3d 1052 [2024]; People v Malloy, 228 AD3d 1068, 1069 [3d Dept 2024], lv denied 42 NY3d 971 [2024]).
On that point, various individuals testified that defendant was one of three people with access to the ex-girlfriend's home. The ex-girlfriend testified that defendant had agreed to come to her house the day of the incident to collect his things after the two had broken up and that she was not present while he was there. By her account, defendant called her and asked for her assistance because he could not get in her house, which made her suspicious on account of the fact that defendant was still in possession of keys to the home. The ex-girlfriend contacted a friend to assist defendant, who indicated that she did not observe defendant when she arrived at the home. After an ominous conversation with defendant suggesting that she would have issues accessing the home when she returned, the ex-girlfriend called law enforcement, who arrived and encountered defendant inside the home. Law enforcement spoke with defendant through an unlocked window and asked him to come outside. When he finally adhered to [*3]that request, defendant made a statement that insinuated his intent to engage in self-harm, prompting law enforcement to detain him. A subsequent search of the residence resulted in the discovery of the revolver on the kitchen table. Testimony from law enforcement reflected that when they discovered the revolver, it was loaded and the hammer was pulled all the way back with the safety off.[FN2] The ex-girlfriend testified that she did not own any firearms and the only other individual who had access to the house and also owned firearms testified that he owned two handguns, neither of which was a revolver. That individual further confirmed that the revolver discovered at the home was not his. The foregoing evidence, viewed in the light most favorable to the People, was legally sufficient to establish that defendant knowingly possessed the revolver (see People v Watts, 215 AD3d at 1173; People v Perry,116 AD3d 1253, 1254 [3d Dept 2014]; People v Pinkney,90 AD3d 1313, 1314-1315 [3d Dept 2011]; see also Penal Law § 10.00 [8]). Further, although a different verdict would not have been unreasonable, "[v]iewing the evidence in a neutral light and according appropriate deference to the jury's credibility determinations, we do not find the verdict to be against the weight of the evidence" (People v McCoy, 169 AD3d at 1264).
Defendant next contends that dismissal is warranted based upon County Court's error in denying his motion to strike the People's May 2022 certificate of compliance (hereinafter COC) and June 2022 first supplemental COC. That argument, mirroring defendant's August 2022 omnibus motion, contends that the People failed to turn over certain discovery materials in a timely manner — specifically highlighting certain recordings of 911 calls — thus rendering their initial and supplemental COCs illusory. "Once the People have met their automatic discovery obligations [pursuant to CPL 245.20 (1)], they must file a COC, which 'shall state that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery' " (People v Contompasis, 236 AD3d 138, 145 [3d Dept 2025], lv denied 43 NY3d 1007 [2025], quoting CPL 245.50 [1]). " '[D]ue diligence' refers to 'a familiar and flexible standard that requires the People to make reasonable efforts to comply with statutory directives.' The inquiry 'is fundamentally case-specific, as with any question of reasonableness,' and . . . 'courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised [*4]of any missing discovery' " (id. at 145-146, quoting People v Bay, 41 NY3d 200, 211-212 [2023]; accord People v Grandoit, ___ AD3d ___, ___, 2025 NY Slip Op 05720, *1 [3d Dept 2025]). "Even after the People declare their readiness for trial, they maintain a duty to expeditiously disclose any CPL 245.20 materials that were previously unknown or not in the People's possession during the automatic disclosure period, and a valid COC and readiness declaration will not be rendered illusory by subsequent diligent disclosures made in good faith" (People v Grandoit, ___ AD3d at ___, 2025 NY Slip Op 05720, *2 [internal quotation marks, brackets and citation omitted]).
The various items of discovery that defendant points to as missing from the initial disclosure are accounted for in the record. The People provided the grand jury minutes as soon as they possessed them, and the request was noted in the initial COC. Further, the People indicated that missing body camera footage was due to a technical error in uploading it to the discovery software and was quickly remedied when defendant pointed out that it was missing. As to the 911 calls, continuing dialogue between defendant and the People reflected some confusion as to the disclosed audio files, which were of dispatch recordings from the State Police. When defense counsel clarified his request, the files were promptly made available six days later. Although there were instances where the People had to provide follow-up discovery, the record reflects that there were diligent efforts made to provide the necessary discovery as they obtained or became aware of any discrepancies (see People v Grandoit, ___ AD3d at ___, 2025 NY Slip Op 05720, *2-3; People v Reynolds, 239 AD3d 1098, 1099 [3d Dept 2025]; People v McMahon,237 AD3d 746, 751 [2d Dept 2025], lv denied 43 NY3d 1057 [2025]; People v Williams, 224 AD3d 998, 1006 [3d Dept 2024], lv denied 41 NY3d 1021 [2024]). "Indeed, the discovery obligations under CPL article 245 do not create a rule of strict liability or require a perfect prosecutor, and, from our review of the record, we cannot say that the People failed to satisfy their continuing discovery obligations under CPL article 245" (People v Graham, 233 AD3d 1361, 1366 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 43 NY3d 944 [2025]).
Defendant advances a related contention that County Court erred in denying his motion to dismiss on speedy trial grounds owing to the People's failure to file a supplemental statement of trial readiness and COC after disclosing the 911 calls, which defendant contends should be charged as postreadiness delay. "Whether the People have complied with their statutory obligation to declare their readiness for a felony trial within six months of the commencement of a criminal action is determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods [*5]of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion" (People v Branton,238 AD3d 1429, 1431-1432 [3d Dept 2025] [internal quotation marks and citations omitted]; see People v Abdullah,133 AD3d 925, 926 [3d Dept 2015], lv denied 27 NY3d 990 [2016]).
Here, the People do not dispute that they were required to file a supplemental COC after the 911 recordings were turned over. That period of postreadiness delay would amount to 166 days and would be in addition to 85 days of prereadiness delay. However, even holding that period of delay against the People, defendant's intervening omnibus motion — predicated, in part, on the People's failure to file a supplemental COC after the 911 calls were disclosed in July 2022 — and the time pending for consideration constituted a 73-day "[d]elay resulting from a court's consideration of pretrial motions [that was] not chargeable to the People" (People v Scaringe,137 AD3d 1409, 1411 [3d Dept 2016], lv denied 28 NY3d 936 [2016]; see CPL 30.30 [4] [a]; People v Jordan, 220 AD3d 1187, 1188 [4th Dept 2023]; People v Abergut, 202 AD3d 1497, 1498 [4th Dept 2022], lv denied 38 NY3d 1068 [2022]; People v Brown, 149 AD3d 584, 585 [1st Dept 2017], lv denied 29 NY3d 1124 [2017]; People v Sydlar,117 AD3d 1314, 1315 [3d Dept 2014], lv denied 23 NY3d 1068 [2014]; see also People v Coley,240 AD3d 122, 128 [2d Dept 2025]). Thus, we conclude that the total chargeable period was less than the permissible six months (see CPL 30.30 [1] [a]) and, accordingly, the People did not violate defendant's statutory speedy trial rights.
Defendant next contends that County Court improperly limited his closing argument by preventing defense counsel from arguing that defendant did not know there was a weapon in the residence, based upon the substance of his jail calls that were precluded from being introduced by the People. We agree with defendant's argument; however, we do not find that it impaired his ability to provide a closing to the degree warranting reversal. As part of its discretion in controlling the duration and scope of summations, a court may preclude counsel from making arguments in summation that are "misleading and not a fair inference from the evidence" (People v Conry, 230 AD3d 596, 597 [2d Dept 2024], lv denied 42 NY3d 1035 [2024]; see People v Mairena,34 NY3d 473, 482 [2019]; People v Ashwal, 39 NY2d 105, 109-110 [1976]). Although a court's directive to not make misleading statements about the evidence may apply to inadmissible or precluded evidence (see People v Jones,147 AD3d 1551, 1551-1552 [4th Dept 2017], lv denied 29 NY3d 1082 [2017]), the statements that were referenced during the jail calls did not speak directly to defendant's knowledge of the presence of the revolver. Nevertheless, we find that this singular error was harmless, as the evidence of guilt was overwhelming [*6]and, noting that defense counsel was still able to present various arguments that could have cast doubt on defendant's knowledge of the gun's presence, there was no significant probability, nor reasonable possibility, that the error would have resulted in a different outcome (see People v Cole, 177 AD3d 1096, 1102 [3d Dept 2019], lv denied 34 NY3d 1015 [2019]; see also People v Mairena,34 NY3d at 486; see generally People v Ortiz, 189 AD3d 891, 892-893 [2d Dept 2020], lv denied 36 NY3d 1058 [2021]; compare People v Gibian, 76 AD3d 583, 588-589 [2d Dept 2010], lv denied 15 NY3d 920 [2010]).
Finally, defendant's contention that County Court improperly relied on impermissible factors at sentencing is unpreserved (see People v Jenne,224 AD3d 953, 958 [3d Dept 2024], lv denied 42 NY3d 927 [2024]), as is his contention that his sentence constitutes an impermissible penalty for exercising his right to trial (see People v Brisman,236 AD3d 1092, 1093 [3d Dept 2025]). As to his argument that his sentence is harsh and excessive, we disagree. Defendant received sentences on both his probation violation and his conviction after trial that were less than the permissible statutory maximums (see Penal Law §§ 70.02 [1] [c]; 70.06 [3] [d]; 100, 265.02; 265.03). Accordingly, upon our review of the record and presentencing reports, including defendant's criminal history and the nature of the criminal conduct underlying these proceedings, we decline his invitation to take corrective action and modify the sentence in the interest of justice (see CPL 470.15 [3] [c]; [6] [b]; see also People v Riddick, ___ AD3d ___, ___, 2025 NY Slip Op 05992, *6 [3d Dept 2025]; People v Crawford, 235 AD3d 1174, 1179 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]). Defendant's remaining contentions, to the extent not explicitly addressed, have been considered and found unavailing.
Clark, J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgments are affirmed.

Footnotes

Footnote 1: The People attached a special information to the indictment establishing defendant's prior conviction, which defendant conceded, thus satisfying that element of the offense (see Penal Law § 265.02 [1]).

Footnote 2: Law enforcement tested the revolver and confirmed that it was fully operable.